Michael W. JEANES and Margaret S. Jeanes, Plaintiffs,

v.

NATIONWIDE INSURANCE COMPANY, Defendant.

Civ. A. No. 7682.

Court of Chancery of Delaware, New Castle County.

Submitted: Oct. 29, 1986.
Decided: May 5, 1987.

Eliot Alazraki, Wilmington, for plaintiffs.

Wayne N. Elliott, and Michael P. Kelly, Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, for defendant.

HARTNETT, Vice–Chancellor.

This suit was brought by plaintiffs to reform the uninsured motorist coverage portion of their automobile liability insurance policy issued by defendant Nationwide Insurance Company. Nationwide moved for summary judgment asserting that several provisions in the policy it issued precludes plaintiffs, as a matter of law, from obtaining a reformation of it. I find that the motion for summary judgment must be denied because none of the provisions in the policy preclude plaintiffs from obtaining its reformation to increase their uninsured motorist coverage, if they can show that Nationwide failed to offer them the option to purchase additional uninsured motorist coverage, as is required by 18 *Del.C.* § 3902.

Nationwide first claims that plaintiffs are precluded from seeking a reformation of their policy because of an exclusionary clause denying coverage while the insured is operating a motor vehicle for a fee. It

also claims plaintiffs are precluded from seeking reformation of the policy because they have not sought to have reformed an insurance policy carried by the employer of the injured plaintiff or because the injured plaintiff has already received payments under insurance carried by her employer. Nationwide's arguments are without merit and its motion for summary judgment must, therefore, be denied.

### I

The facts necessary for a consideration of the motion are not disputed. Margaret S. Jeanes, one of the plaintiffs, while driving a bus in the course of her employment with the Delaware Administration for Regional Transit ("DART"), was allegedly forced to avoid a collision with an unknown motor vehicle which suddenly veered into her traffic lane. As a result of this alleged collision avoidance Mrs. Jeanes suffered bodily injury. Since the accident, Mrs. Jeanes has received workmen's compensation payments and no-fault benefits from the carrier of DART's insurance.

At the time of the accident, Mrs. Jeanes and her husband, the other plaintiff, were insured under an automobile policy issued by Nationwide which provided uninsured motorist insurance in the amount of $10,000 per person/$20,000 per occurrence. Mrs. Jeanes has received $10,000, which is equal to the limits of the Nationwide policy, from the carrier of an uninsured motorist policy of DART, her employer.

Plaintiffs allege that they were not offered the option to purchase $100,000/$300,000 coverage, as is required by 18 *Del.C.* § 3902, and therefore their Nationwide policy must be reformed to include coverage in those amounts. Nationwide maintains that the language of the uninsured motorist provision in the policy precludes plaintiffs from any recovery against it.

The first provision relied upon by Nationwide is an exclusion which, if valid, precludes uninsured motorist coverage as to any accident occurring during the use of any vehicle by the insured to carry persons or property where the insured receives a fee. Nationwide also claims that "other insurance" exclusions in the policy reduce coverage by a sum equal to the payments made to plaintiffs by reason of the insurance policies carried by DART.

Nationwide's motion for summary judgment is based on its assertion that plaintiffs' claims are barred by the valid and legally enforceable exclusions in the insurance policy and that plaintiffs' action for reformation therefore must be dismissed as a matter of law. It is clear, however, that Nationwide's motion for summary judgment must be denied because the "for fee" exclusion violates the Delaware Uninsured Motorist Coverage statute, 18 *Del.C.* § 3902, and the "other insurance" exclusions also violate the statute, or by their terms do not apply to the present facts. The language relied upon by Nationwide therefore cannot bar plaintiffs' reformation of the policy if the facts are eventually found to justify a reformation.

### II

The provisions of 18 *Del.C.* § 3902 require that a motor vehicle liability insurance policy provide to the insured, as part of the policy coverage, minimal supplemental coverage for the protection of the insured against bodily injury caused by the operators of uninsured or hit-and-run motor vehicles. The statute also provides that the insurer shall provide to the insured additional coverage, at an additional charge, for personal injury resulting from the acts of an uninsured motorist. As held in *Schwartz v. Centennial*, Del.Ch., C.A. 5350–NC, Hartnett, V.C. (April 1, 1981), unless the insured affirmatively waives the additional coverage it must be provided. The pertinent provisions of 18 *Del.C.* § 3902 state:

(a) No policy insuring against liability arising out of the ownership, maintenance or use of any motor vehicle shall be delivered or issued for delivery in this State with respect to any such vehicle registered or principally garaged in this State unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who

are legally entitled to recover damages from owners or operators of uninsured or hit-and-run motor vehicles for bodily injury, sickness or disease, including death, or personal property damage resulting from the ownership, maintenance or use of such uninsured or hit-and-run motor vehicle. Except, that no such coverage shall be required in or supplemental to a policy where rejected in writing, on a form furnished by the insurer describing the coverage being rejected, by an insured named therein, or upon any renewal of such policy unless the coverage is then requested in writing by the named insured. The coverage herein required may be referred to as "uninsured vehicle coverage."

(b) The amount of coverage to be so provided shall not be less than the maximum limits for bodily injury, death and property damage liability insurance provided for under the motorist financial responsibility laws of this State. The coverage for property damage shall be subject to a $250 deductible for property damage arising out of any 1 accident unless the insurer and the insured agree in writing to a different deductible. Each insured shall be offered the option to purchase additional coverage for personal injury or death up to a limit of $300,000, but not to exceed the limits for personal injury set forth in the basic policy.

There are two separate issues as to the validity of the clause in the Nationwide policy which excludes coverage when the insured is operating a motor vehicle for a fee. The first is whether the exclusion is void as to the $10,000/$20,000 coverage which was provided to plaintiffs. The second issue is whether a similar exclusion would be void as to the $100,000/$300,000 extra coverage if plaintiffs are entitled to it.

If the exclusions are void as to both the $10,000/$20,000 coverage and the claimed $100,000/$300,000 coverage, then defendant-Nationwide is entitled to summary judgment as to the entire suit because it is not denied that the injured party, Mrs. Jeanes, was operating a bus for a fee.

### III

■ Several Delaware cases have construed the purpose of 18 *Del.C.* § 3902. In *O'Hanlon v. Hartford Accident and Indemnity Company*, D.Del., 439 F.Supp. 377, 383 (1977), the District Court held that, "[t]he first function of the statute is to set a floor on the amount of coverage required in the absence of a written waiver." The Delaware Supreme Court has stated, "This financial responsibility law is intended to protect the public in its possible claims agsinst drivers of motor vehicles involved in an accident causing bodily injury or damage to property." *State Farm v. Arms*, Del.Supr., 477 A.2d 1060, 1063 (1984). In a recent pronouncement by the Delaware Superior Court it was stated, "[t]he coverage contemplated by 18 *Del.C.* § 3902 is to place the insured in the same position as he would have been if the tortfeasor had carried the same liability coverage which the insured carried (limited by the statutory maximum)." *Brown v. Comegys*, Del.Super., 500 A.2d 611, 613 (1985). Finally, according to a leading treatise in the area,

"Uninsured motorist statutes are considered to be remedial in nature designed to afford maximum protection to a state's residents, and fill the gaps in compulsory insurance plans. Their purpose is to provide a remedy where an injury is caused by an uninsured motorist; or, as has been more frequently stated, to provide a remedy to the innocent victims of irresponsible motorists who may have no resources to satisfy the damages they cause." 8C *Appleman on Insurance* § 5067.45.

From these authorities it is clear that the Delaware uninsured motorist statute is designed to protect the prudent, responsible driver who insures his vehicle and person from damage and injury at the hands of an irresponsible uninsured or sometimes unknown motorist. Cf. *Stokes v. Reliance Ins. Co.*, Del.Super., 521 A.2d 638 (1986).

It is also clear that uninsured motorist coverage is personal to an insured and as such it travels with him wherever he goes

and is therefore not allocable to a specific automobile or use.

In pertinent part, 18 *Del.C.* § 3902(a) states:

"No policy insuring against liability ... shall be delivered or issued ... in this State ... unless coverage is provided therein or supplemental thereto for the protection of *persons* insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or hit-and-run motor vehicles...." (emphasis added)

A recent decision of the Supreme Court of Connecticut, construing a statute similar to the Delaware statute, strongly supports the proposition that the Delaware uninsured motorist statute mandates coverage to the person who purchased the insurance, regardless of the vehicle that he is operating when he is injured by an uninsured driver, and that coverage is not limited to the occupant of a particular vehicle or to a particular use as set forth in the policy. In *Harvey v. Travelers Indemnity Co.,* Conn. Supr., 188 Conn. 245, 449 A.2d 157 (1982), that Court held:

"Our uninsured motorist insurance statute ... provides coverage for *persons* insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles...." (Emphasis original.)

"The coverage is portable: The insured and family members ... are insured no matter where they are injured. They are insured when injured in an owned vehicle named in the policy, in an owned vehicle not named in the policy, in an unowned vehicle, on a motorcycle, on a bicycle, whether afoot or on horseback or even on a pogo stick." (Citations omitted.)

Other courts confronted with the interpretation of uninsured motorist statutes similar or identical to the Delaware statute have consistently held that uninsured motorist coverage is designed to be personal and not restricted to a certain vehicle. *Bradley v. Mid–Century Ins. Co.,* Mich. Supr., 409 Mich. 1, 294 N.W.2d 141 (1980); *National Service Fire Ins. Co. v. Mikell,* Fla.App., 204 So.2d 343 (1967); *Kau v.*

*State Farm Mutual Auto. Ins. Co.,* 58 Hawaii 49, 564 P.2d 443 (1977); *Beek v. Ohio Casualty Ins. Co.,* 135 N.J.Super. 1, 342 A.2d 547 (1975); *Doxtater v. State Farm Mutual Auto. Ins. Co.* 8 Ill.App.3d 547, 290 N.E.2d 284 (1972); *State Farm Mutual Auto. Ins. Co. v. Robertson,* Ind. App., 156 Ind.App. 149, 295 N.E.2d 626 (1973); *Otto v. Farmers Ins. Co.,* Mo.App., 558 S.W.2d 713 (1977).

In an attempt to support the validity of the exclusion as to vehicles carrying passengers for a fee, Nationwide cites several authorities, none of which are on point because none of the cases cited upheld the validity of an exclusion similar to that present here. Cf., *Brophy v. Inter–Insurance Exchange of the Chicago Motor Club, Inc.,* Ill.App.Ct., 56 Ill.App.3d 173, 14 Ill.Dec. 28, 371 N.E.2d 1081 (1977); *Harleysville Mutual Cas. Co. v. Blumling,* Pa.Supr., 429 Pa. 389, 241 A.2d 112 (1968). Nationwide also cites *Appleman on Insurance* § 5078.75 as specifically upholding the enforceability of these types of exclusions. This reliance is misplaced, however. The exclusion discussed in that section related only to the use of the insured's own vehicle to carry persons or property for a fee. In the case at bar, however, plaintiff was operating a vehicle provided by her employer and not her own vehicle.

I find that the purpose of 18 *Del.C.* § 3902 is to mandate uninsured motorist coverage for the person who purchases motor vehicle liability coverage regardless of whether the insured is operating his own vehicle or is operating an employer's vehicle to carry passengers for hire and therefore the "for fee" exclusion violates this intent of the statute and is not enforceable.

There is no difference whether the challenged "for fee" exclusionary clause relates to the $10,000/$20,000 mandated minimum coverage policy or to the additional optional $100,000/$300,000 coverage which the statute requires be provided to the insured.

The "for fee" exclusion clause therefore cannot prevent plaintiffs from recovering on the policy as a matter of law. Defend-

ant's motion for summary judgment on this issue must, therefore, be denied.

## IV

■ Nationwide also claims that plaintiffs must seek reformation of the policy carried by DART, the injured plaintiff's employer, before plaintiffs can maintain this suit and because they have failed to do so this suit must be dismissed. Nationwide's claim is based on a provision in the policy which it issued to plaintiffs which states:

"Other insurance—*if you have other insurance:* (1) for bodily injury suffered by an insured while occupying a motor vehicle you do not own, we will pay the insured loss not covered by other insurance." (Emphasis added.)

This language is clear and unambiguous—in order for this provision to exclude coverage of plaintiffs by Nationwide, the plaintiffs must "have other insurance." Plaintiffs, however, have no other insurance. Mrs. Jeanes received payments under policies of DART, her employer, not pursuant to any policy of hers. Because the language is clear and unambiguous, it is not necessary to construe it. If, however, it was unclear or ambiguous, any ambiguity would be construed against Nationwide. *Hallowell v. State Farm Mutual Auto. Ins. Co.*, Del.Supr., 443 A.2d 925 (1982); 8C *Appleman on Insurance* § 5069.

In any case, an insured may seek recovery from his insurer directly, even if there is other insurance available for his benefit. In *Reese v. State Farm Mut. Automobile Ins. Co.*, Md.Ct.Apps., 285 Md. 548, 403 A.2d 1229, 1232 (1979), the Court held:

"A suit based upon the insured's allegations that he is entitled to payment under one of the first party coverage clauses in the contract he entered into with his insurance carrier, and that the carrier has refused payment thereby breaching its promise, is clearly a contract action. This view is in accord with other cases throughout the country which have held that *actions by insureds against their insurers,* under uninsured motorist endorsements similar to that prescribed by the Maryland statute *are contract ac-*

*tions* and thus are governed by the principles and procedures applicable to contract actions generally." (emphasis added)

The theory was restated briefly in 8D *Appleman on Insurance,* supra, § 5135: "The insured may sue the uninsured motorist alone, or in conjunction with any other person responsible, although, ... it is not essential to do so in order to present an action against the uninsured motorist carrier.", citing *Reese,* supra. In light of the great weight of authority to the contrary, defendant's argument that plaintiffs must seek reformation of any DART policies before proceeding against them is without merit.

## V

■ Nationwide also claims that it cannot be liable to plaintiffs because of the language in the policy which states that Nationwide's responsibility to compensate plaintiffs will be reduced by "... any sums paid by or for any liable parties, and by any sums paid or payable under workmen's compensation, disability benefits, or similar laws."

The payment received by Mrs. Jeanes pursuant to a no-fault uninsured motorist policy carried by DART, her employer, was not a sum paid by a liable party under the terms of defendant's insurance contract. DART could not have been liable to Mrs. Jeanes under the uncontroverted facts and therefore she did not receive any sum from a liable party. Even assuming, *arguendo,* that DART was a liable party, the payment from DART's insurance carrier to plaintiffs cannot be used to eliminate Nationwide's liability, at least not at this stage of the proceedings, notwithstanding a so-called "reducing clause" provision in the Nationwide policy. There are two rules relating to reducing clauses, both of which preclude a dismissal of plaintiffs' claims.

The first rule is set forth in *American Mutual Ins. Co. v. Romero,* 10th Cir., 428 F.2d 870, 872 (1970). The Court held that a reducing clause provision is contrary to the statutory requirement for an uninsured motorist stated minimum coverage. See also: *Courtemanche v. Lumbermens Mutual Casualty Co.,* N.H.Supr., 118 N.H.

168, 385 A.2d 105 (1978); *Wescott v. Allstate Insurance*, Me.Supr.Jud.Ct., 397 A.2d 156 (1979).

The other, and better rule, is as set forth in *Travelers Insurance Co. v. Wilson*, Fla. Ct.App., 371 So.2d 145 (1979) which stated: "... the purpose of [Uninsured Motorist Coverage] legislation was to provide for broad coverage (i.e. not limited by special policy exclusions), but also carefully to exclude any duplication of benefits." Under either the *Travelers* or *American Mutual* rule, Nationwide is not entitled to summary judgment precluding plaintiff's recovering because of the existence of the reducing clauses.

As to the workman's compensation benefits Mrs. Jeanes received, no court has upheld a reduction provision unless the insured is fully compensated from additional sources. 8 *Appleman on Insurance*, supra, § 5101.35; *Motor Club of America Ins. Co. v. Phillips*, N.J.Supr., 66 N.J. 277, 330 A.2d 360 (1974). As yet there has been no determination of the amount of Mrs. Jeanes' injuries and therefore there is no basis for the claim that she has already been fully compensated.

Even if the worker's compensation payments are ultimately found to be duplicative, Nationwide still will not be able to enforce its reducing clause provision because of them. *Appleman*, in his treatise, states, "In fact, whatever the line of reasoning invoked, the majority of courts have not enforced deduction provisions where worker's compensation payments have been paid or are receivable." 8D *Appleman on Insurance*, supra, § 5128.35. Typical of these decisions is *Bartlett v. Nationwide Mutual Insurance Co.*, Ohio Ct.Apps., 30 Ohio App.2d 145, 283 N.E.2d 658, 660–661 (1972) which states that "..., the policy provision for deduction of the workmen's compensation benefits received is invalid because it does not provide the [uninsured motorist] coverage." See also: *Travelers Ins. Co. v. National Farmers Union Prop. and Cas. Co., et al*, Ark. Supr., 252 Ark. 624, 480 S.W.2d 585, 590 (1972); *Aldcroft v. Fidelity and Cas. Co. of New York*, R.I.Supr., 106 R.I. 311, 259 A.2d 408, 414 (1969); *Leist v. Auto Owners Ins. Co.*, Ind.Ct.Apps., 160 Ind.App. 322,

311 N.E.2d 828, 832 (1974); *Preferred Risk Mu. Ins. Co. v. Holmes*, Ala.Supr., 287 Ala. 251, 251 So.2d 213 (1971); *Van Hoozer v. Farmers Ins. Exchange*, Kan.Supr., 219 Kan. 595, 549 P.2d 1354 (1976).

Nationwide also claims it can reduce the amount of its coverage by deducting any payments paid to plaintiffs under personal injury protection ("PIP") coverage. Here again, Nationwide advances a position held by only a minority of those jurisdictions which have considered the issue. In a case addressing this identical issue, the Pennsylvania Superior Court stated:

"Traditionally, this statute [the Uninsured Motorist statute] has been construed liberally, with courts exercising a pronounced propensity to find coverage unless equally strong legal or equitable considerations to the contrary are present; any conditions or restrictions in an insurance policy which are held to be in derogation of the legislative purpose of the uninsured motorist law are void as against public policy. (citations omitted) ... Indeed, if the legislature intended to allow a dollar-for-dollar set-off of no-fault benefits against benefits payable under uninsured motorist coverage, it could have expressly so provided...."

*Brader v. Nationwide Mutual Ins. Co.*, Pa.Super., 270 Pa.Super, 258, 411 A.2d 516, 517 (1980). See also, *Travelers Ins. Co. v. Benton*, Md.Ct.Apps., 278 Md. 542, 365 A.2d 1000 (1976). As the Delaware Uninsured Motorist Statute closely parallels the Pennsylvania statute and because of the policy behind the Delaware statute, it is inconsistent with the legislative intent of the statute to permit a reduction of uninsured motorist benefits based on PIP payments received by the insured.

**VI**

█ Nationwide lastly claims that its policy is an "excess", "other", or "umbrella" policy and as such, it is not primarily liable to the plaintiffs for their injuries. Cases and commentaries on this issue abound. In *Courtemanche v. Lumbermens Mutual Cas. Co.*, supra, 385 A.2d at 107–108, the New Hampshire Supreme Court stated: "In effect, the court discarded the 'Other Insurance' clause as violating

the uninsured motorist statute. ... The plaintiff is thus permitted to stack the coverages of as many uninsured motorist policies as are applicable to him, up to his total damages." The Pennsylvania Supreme Court has also held that, "... where the loss exceeds the limits of one policy, the insured may proceed under other available policies up to their individual limits or to the amount of the actual loss." *Harleysville Mutual Casualty Co. v. Blumling,* Pa.Supr., 429 Pa. 389, 241 A.2d 112, 115 (1968). See also *Motor Club of America Ins. Co. v. Phillips,* N.J.Supr., 66 N.J. 277, 330 A.2d 360 (1974); *Wescott v. Allstate Insurance,* supra. Approximately twenty-four states have adopted similar positions. I find, therefore, that the plaintiffs may stack the coverages available to them, if the actual damages, as may be eventually determined, exceed the limits of one or more policies. In any case, the primary liability would be on the insurer of the operator in the case of a standard automobile liability policy, which is Nationwide in this instance. *United States Fidelity and Guaranty Co. v. Safeco Ins. Co. of America,* Mo.Supr., 522 S.W.2d 809 (1975).

The motion of defendant-Nationwide for summary judgment is therefore denied. IT IS SO ORDERED.