**Earl KRUTZ, Marion Krutz and Sharon Krutz, Plaintiffs,**

v.

**HARLEYSVILLE MUTUAL INSURANCE COMPANY and Aetna Casualty & Surety Company, Defendants.**

**Civ. A. No. 87–405–JJF.**

United States District Court,
D. Delaware.

June 26, 1991.

---

Louis B. Ferrara of Aerenson Ferrara & Lyons, Wilmington, Del., for plaintiffs.

B. Wilson Redfearn of Tybout Redfearn & Pell, Wilmington, Del., for defendant Harleysville Mut. Ins. Co.

Gary W. Aber of Heiman Aber & Goldlust, Wilmington, Del., for defendant Aetna Cas. & Sur. Co.

## MEMORANDUM OPINION

FARNAN, District Judge.

### I.  INTRODUCTION

On June 25, 1985, a Pontiac Fiero collided with a 1983 Chevrolet Camaro driven by Sharon Krutz ("Krutz").  Krutz allegedly suffered injuries in the accident that re-quire compensation greater than the $25,-000 insurance proceeds available from the combined limits of the insurance policies held by the driver and owner of the Pontiac Fiero.  Krutz, with her parents Earl and Marion Krutz as co-plaintiffs, filed this lawsuit to recover Krutz's losses in excess of the available $25,000 from two of their insurers by way of the Delaware statutes regulating uninsured/underinsured motorist benefits.  Del.Code Ann. tit. 18, §§ 3902–3915 (1989).  In their original Complaint, the plaintiffs seek recovery against Harleysville Mutual Insurance Company ("Harleysville").  Harleysville issued a policy insuring the use and operation of the 1983 Camaro Krutz was driving at the time of the accident.  The policy listed Earl and Marion Krutz as "named insureds" and provided coverage for Ms. Krutz while operating the Camaro through the policy's protection for "covered persons".  The Complaint seeks $300,000 damages, the limit of the Harleysville policy's uninsured/underinsured motorist coverage.

By way of their Amended Complaint, plaintiffs brought suit against Aetna Casualty & Surety Company ("Aetna") seeking the policy limits of an Aetna policy.  Aetna had issued a policy with $300,000 of uninsured/underinsured motorist benefits insuring Ms. Krutz as the owner of a 1978 Oldsmobile Cutlass ("Cutlass" which was not involved in the June 25th accident).  The Aetna policy listed Ms. Krutz as "named insured" and provided uninsured/underinsured motorist coverage to Ms. Krutz while occupying an automobile not owned by her.

The Amended Complaint did not allege any facts or theories concerning which insurer is primarily or principally responsible to the plaintiffs on their claims.  In this regard, Harleysville and Aetna have stepped into the vacuum created by the absence of allegations concerning primary insurance by filing cross-claims and motions for summary judgment on these cross-claims against each other with each insurer contending that the other should be

deemed the primary insurer.[1]

## II. STANDARD

Summary judgment may be granted when there is a showing "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "Since this is a case involving no more than legal interpretation of an insurance policy, and most of the questions raised are legal, rather than factual in nature, ... summary judgment is particularly appropriate." *Continental Insurance Co. v. Bodie*, 682 F.2d 436, 439 (3d Cir.1982). Therefore, the Court must decide as a matter of law whether Harleysville's policy for the Camaro or Aetna's policy for the Cutlass should be deemed primary insurance for the damages suffered by Ms. Krutz in excess of the $25,000 available from the tortfeasor.

## III. DISCUSSION

■ "Once again, this Court must venture into the morass of Delaware uninsured motorist law and resolve a previously unanswered question of state law." *Corso v. State Farm Mutual Automobile Insurance Co.*, 668 F.Supp. 364, 365 (D.Del. 1987), *aff'd without op.*, 838 F.2d 1205 (3d Cir.1988). The absence of a decision on this matter from the Delaware Supreme Court requires this Court under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), to predict how the Delaware Supreme Court would rule. *Rabatin v. Columbus Lines, Inc.*, 790 F.2d 22, 24 (3d Cir.1986). In making such a prediction this court must examine "lower state court decisions, related decisions and considered dicta of [the] state's highest court, scholarly works, and any other reliable data tending convincingly to show how the highest court would resolve the issue." *Corso*, 668 F.Supp. at 366. Each insurer has relied on many of these sources of law and on the language of the insurance policies in making arguments in support of their respective summary judgment motion.

In support of its motion, Harleysville makes two arguments. First, it argues that the Delaware Supreme Court's decision in *Frank v. Horizon Assurance Co.*, 553 A.2d 1199 (Del.1989) suggests that Delaware public policy requires uninsured/underinsured motorist coverage to be deemed "person-specific" rather than "vehicle-specific." Accordingly, Harleysville contends that Aetna's policy, which insured Ms. Krutz, the person in the accident, would be the primary policy.

Secondly, Harleysville relies on the language of its insurance policy which, after defining "you" as Earl and Marion Krutz, provides the following in its "other insurance" provision:

> If there is *other applicable similar insurance*, we will only pay our share of the loss. *Our share is the proportion that our limit of liability bears to the total of all applicable limits.* However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance. (Emphasis Added).

Appendix to Harleysville's Brief in Support of Its Motion for Summary Judgment (D.I. 47) at A–21 (hereinafter "Harleysville's Appendix"). Harleysville reasons that its policy and Aetna's policy are "applicable similar insurance" warranting the division of liability *pro rata.*

For its part Aetna, relying on lower court decisions, argues that *Frank* does not mandate the conclusion that Delaware public policy requires it to be deemed the primary insurer. Second, it asserts that the language of the "other insurance" provision in its policy makes its policy excess insurance. After defining "you" as Ms. Krutz, the Aetna policy provides:

> If there is other applicable insurance for bodily injury, we will pay only our share. Our share is the proportion that our limit

---

1. Harleysville has also moved for summary judgment on Aetna's claim for indemnification. The Court concludes that summary judgment on this issue must be granted to Harleysville as no contractual basis or other basis under Delaware law exists for imposing a duty of indemnification on Harleysville. *See American Insurance Co. v. Material Transit, Inc.*, 446 A.2d 1101, 1104 (Del.Super.Ct.1982).

of liability bears to the total of all applicable limits. However, *any insurance we provide for bodily injury with respect to a vehicle you do not own shall be excess over any other collectible insurance.* (Emphasis Added). Appendix to Aetna's Brief in Support of Its Motion for Summary Judgment (D.I. 52), Exhibit B (hereinafter "Aetna's Appendix"). Aetna focuses upon the highlighted language and argues that it makes Aetna's insurance excess because at the time of the accident Ms. Krutz was driving the Camaro, a vehicle registered in her parents' names and therefore not owned by her.

The Court will first address the contentions of Harleysville and Aetna regarding the "other insurance" provisions in their respective policies.

### A. *The Other Insurance Provisions.*

Other insurance provisions typically state that the policy in which the provision is contained will provide only limited coverage for the insured's loss if other insurance is available. Such limitations come in three varieties: (1) pro rata, (2) excess, and (3) escape. *See generally Putnam v. New Amsterdam Casualty Co.,* 48 Ill.2d 71, 269 N.E.2d 97, 99–100 (1970).

A pro rata clause usually states that, if other insurance exists, the policy with the pro rata clause will pay only its pro rated share of the loss. An excess clause provides that if other insurance is available, the policy with the excess clause will provide coverage for an insured's loss only after the limits of coverage found in the other insurance policy are exhausted. An escape clause allows the policy with the escape clause to avoid coverage altogether if there is other insurance available.

These three types of limitations are often found joined together in an "other insurance" provision, each limitation applying when a different event occurs. In this case, both Harleysville's and Aetna's policies contain "other insurance" provisions with pro rata and excess clauses, but not

an escape clause. The division of responsibility flowing from the "other insurance" provisions of each policy depends on whether the undisputed facts of this case trigger Harleysville's pro rata clause or whether the facts dictate that Aetna's excess clause apply. The interaction of the Harleysville pro rata clause and the Aetna excess clause turns on whether Ms. Krutz was driving an automobile at the time of the accident which she owned within the meaning of the Aetna policy.[2]

Harleysville contends that Ms. Krutz must be considered an owner of the Camaro in view of her uncontradicted deposition testimony:

Q. Who owned the Camaro?

A. It was in my father and mother's name.

Q. So they owned that car?

A. Yes.

Q. Who drove that car besides you and your father and mother?

A. Nobody else.

Q. Did your father and mother drive the car?

A. My father did. He didn't drive it much though.

Q. How often would you say he used that car?

A. Just a couple of times. It wasn't many.

Harleysville Appendix at A–1 through A–2.

After indicating that she owned the Cutlass, Ms. Krutz's deposition establishes that she "preferred to drive the Camaro more than the Olds" and "[t]he Camaro, I drove that 90 percent, and the Olds, I would say about 10." Appendix at A–3. Her deposition continues:

Q. Who paid for the car that you were driving at the time of the accident, the Camaro? Who paid for that car?

A. I made the payments on it.

Q. You made the payments for it, but it was registered in the name of your parents. Is that it?

---

**2.** *See Sammons v. Nationwide Mutual Insurance Co.,* 267 A.2d 608, 609 (Del.Super.Ct.1970) (provisions of excess clause apply when "an insured

or uninsured driver injures a named insured while he is occupying a non-owned automobile").

A. Yes.

    \*     \*     \*     \*     \*     \*

Q. Why was the Chevy Camaro that you were driving at the time of your accident titled in your parents' name if you drove it 90% of the time?

A. Because my father works for General Motors and he wanted to give me a discount on the car, so it had to be in their names for me to get the discount. And that's the only reason why it was in their name.

Harleysville Appendix A–6 through A–7.

█ "The general rule is that proof that a motor vehicle is registered in the name of a person as owner creates a presumption which makes a *prima facie* case of ownership of the vehicle." *Finkbiner v. Mullins,* 532 A.2d 609, 613 (Del.Super.Ct.1987). That *prima facie* case may be overcome by evidence which refutes the registration. *Cammile v. Sanderson,* 48 Del. (9 Terry) 225, 101 A.2d 316, 319 (Super.Ct.1953). The strength of the refuting evidence, however, may be lessened by the consideration that a person may be deemed an owner for some purposes and not an owner for other purposes. *See* 6B J.A. Appleman & J. Appleman, *Insurance Law & Practice* § 4313 (1979) (footnote omitted).

Harleysville essentially urges the Court to countenance a practical approach to determining vehicle ownership by recognizing factors such as vehicle use and financing as more significant than legal and public policy considerations. The Court concludes Harleysville's evidence that ownership of the Camaro by Ms. Krutz has been established for purposes of the Aetna policy is insufficient because the Court finds there are "State ... interests (as to interpreting ownership of an automobile) to be weighed" against Ms. Krutz's deposition testimony. *William M. Young Co. v. Tri-Mar Associates, Inc.,* 362 A.2d 214, 216 (Del.Super.Ct.1976).

Title 21, Delaware Code Annotated, Section 101(24) (1985) defines "owner" for the purposes of Title 21 as "the person who holds the legal title of the vehicle". Thus, under Delaware laws regulating ownership of a vehicle, Earl and Marion Krutz, the persons to whom title was issued, are the owners of the Camaro. The Court believes that the indicia of ownership expressed in Section 101(24) must be read into the Aetna policy because of the important role automobile titles play in the administration of Delaware's laws particularly with regard to problems which arise from automobile accidents.[3]

For example, title to an automobile plays a key role in enforcing the State's no-fault or financial responsibility law, a law closely aligned with the laws regulating uninsured/underinsured motorist benefits.[4] Title 21, Delaware Code Annotated, Section 2118(k) (1985) provides:

> A motor vehicle registration shall not be issued or renewed for any vehicle not covered by a vehicle insurance policy meeting the requirements of the [financial responsibility act].

Therefore, under the laws of Delaware, no title to an automobile may issue unless the owner has obtained no-fault insurance in compliance with the financial responsibility act. "To allow title to an automobile to change hands, in absence of compliance with the registration statutes, would certainly inhibit enforcement of the compulsory insurance law, with its goal of protecting injured persons from financially irresponsible negligent drivers." *Morgan v.*

---

**3.** For cases construing "owner" in an insurance policy as the term "owner" is defined in state statutes regulating the usage of automobiles, *see, e.g., Nationwide Mutual Insurance Co. v. Fireman's Fund Insurance Co.,* 279 N.C. 240, 182 S.E.2d 571, 575–576 (1971) (financial responsibility statute); *Samples v. Georgia Mutual Insurance Co.,* 110 Ga.App. 297, 138 S.E.2d 463, 465 (1964) (title statute); *Garlick v. McFarland,* 159 Ohio St. 539, 113 N.E.2d 92, 95 (1953) (title statute).

**4.** For a fuller treatment of the relationship in Delaware between the financial responsibility statute and the uninsured/underinsured motorist law, *see O'Hanlon v. Hartford Accident & Indemnity Co.,* 457 F.Supp. 961, 963–65 (D.Del. 1978), *aff'd,* 639 F.2d 1019 (3d Cir.1981) and an earlier opinion in that same case, *O'Hanlon v. Hartford Accident & Indemnity Insurance Co.,* 439 F.Supp. 377, 383 (D.Del.1977), *rev'd on other grounds,* 639 F.2d 1019 (3d Cir.1981).

*State Farm Mutual Automobile Insurance Co.*, 402 A.2d 1211, 1213 (Del.Super.Ct.1979).

The Court is persuaded that absent some extraordinary circumstances, it would be illogical for ownership of a vehicle to be vested by judicial decision in a person other than the person recognized as the owner by the state and the company insuring the vehicle. It would simply be contrary to the manner insurance companies underwrite risks to shift the risk away from the company which wrote the policy for the named insured's ownership merely because the vehicle is involved in an accident where both the vehicle involved and the driver are insured but their insurance companies are competing to reduce their financial exposure. The orderly administration of both the motor vehicle statutes concerning title and the financial responsibility act require courts to avoid venturing into post-accident ownership determinations at the behest of insurers whose interests are not as compelling as those of the state and its citizens. Simply stated, Aetna did not assume the risk of insuring the Camaro nor did it receive the premiums commensured with that risk. By seeking to have Ms. Krutz determined the owner of the Camaro, Harleysville is boldly attempting to shift its risk exposure to Aetna and thereby reconstruct the order of liability established by the insurance industry in its use of other insurance provisions. With these principles in mind, the Court concludes that Ms. Krutz was not the owner of the Camaro involved in the instant accident and, therefore, Ms. Krutz's injuries resulted from her presence in a vehicle she did not own for purposes of the Aetna policy. Because of this conclusion, the Court must give effect to the Aetna excess clause and, further, concludes that Ms. Krutz did not have "other applica-ble similar insurance" as contemplated by the pro rata limitation clause of the Harleysville policy.[5]

Therefore, the Harleysville policy will be deemed primary unless such a result offends the public policy of the State of Delaware as contended by Harleysville.

### B. *Public Policy Considerations.*

One State of Delaware trial court decision addressed what Delaware public policy requires in a case such as this one, although one decision from the Delaware Court of Chancery contains *dicta* on the subject. In *Urell v. Pennewell,* C.A. No. 86C–AP–41, slip op. (Del.Super.Ct. May 31, 1988), the decision Aetna urges this Court to follow, Dorrells Pennewell drove her motor vehicle into a bus owned by the Christina School District and driven by plaintiff Sharon Urell, an employee of the School District. Urell, injured in the accident, sued Pennewell and the School District as well as Aetna, Urell's liability and uninsured/underinsured motorist insurance provider. Christina School District moved for summary judgment, claiming that the underinsured motorist insurance provided by Aetna should be primary rather than the insurance provided by the policy maintained by the School District.

In support of its position, the School District urged the Court to follow the reasoning of the Delaware Court of Chancery in its decision in *Jeanes v. Nationwide Insurance Co.*, 532 A.2d 595 (Del.Ch.1987), the decision upon which Harleysville relies in this case. *Jeanes*, in ruling on another issue, noted in *dicta* that in a case where a person was injured while driving another person's automobile, "the primary liability would be on the insurer of the operator in

---

**5.** This conclusion is consistent with the teachings of two treatises. In Am.Jur.2d, the authors write that, "In the ... situation mentioned above—that is, where one of the policies contains an 'excess insurance' clause and the other a 'pro rata' clause—effect is generally given to the 'excess insurance' clause. Thus, where an 'excess insurance' clause pertains to non-ownership coverage, the conclusion is generally reached ... that the policy issued to the owner of the vehicle is the 'primary' policy, and the company issuing it is liable up to the limits of the policy without apportionment." 7A Am.Jur.2d *Automobile Insurance* § 434 (1980) (footnote omitted). *See* also *Appleman* § 5102.65 (footnote omitted) [in] "situations where liability can arise out of the operation of a nonowned automobile, the rule of primacy is generally that first coverage follows the vehicle, so that any proceeds available through it should be applied first."

the case of a standard automobile policy...." *Jeanes*, 532 A.2d at 601. The court in *Urell* rejected the School District's argument and held that the *dicta* on primary insurance in *Jeanes* was either "a misstatement or misinterpretation of the teaching found in *U.S. Fidelity [& Guaranty Co. v. Safeco Insurance Co.*, 522 S.W.2d 809 (Mo.1975) ]*," the case which the court in *Jeanes* cited in support of its *dicta*. *Urell*, slip op. at 8. The *U.S. Fidelity* case actually stated that "the general rule ... places primary liability on the insurer of the owner of the automobile involved rather than on the insurer of the operator...." *U.S. Fidelity*, 522 S.W.2d at 821 (quoted in *Urell*, slip op. at 9). *Urell* adopted the general rule and in denying the School District's motion concluded that "the policy which covers the owner of vehicle involved is primary and the operator's uninsured motorist coverage is excess." *Urell*, slip op. at 10.

Despite this convincing rejection of *Jeanes*, Harleysville requests the Court to adopt the *dicta*. In support, Harleysville urges the Court to conclude that the Delaware Supreme Court's recent decision in *Frank v. Horizon Assurance Co.*, 553 A.2d 1199 (Del.1989), mandates that the insurance on an operator of a motor vehicle be considered primary and the insurance on a vehicle be considered the excess insurance. The Court in *Frank*, as the court in *Jeanes*, held that "uninsured motorist coverage is properly considered personal to the insured and not vehicle specific." *Frank*, 553 A.2d at 1203; *see Jeanes*, 532 A.2d at 597–98 ("uninsured motorist coverage is personal to an insured and as such it travels wherever he goes and is therefore not allocable to a specific automobile or use"). According to Harleysville, the establishment in *Frank* of uninsured motorist insurance as specific to a person puts the Delaware Supreme Court's implied imprimatur on the decision in *Jeanes*.

The problem with that analysis is that *Frank* was concerned solely with the effect of a provision in an insurance policy which would have excluded uninsured/underinsured coverage for "a claim arising out of an accident involving a vehicle owned by the insured, but not listed as a covered vehicle under the policy." *Frank*, 553 A.2d at 1201. The Delaware Supreme Court denied effect to this so-called "other motor vehicle" clause, noting that public policy required that "[o]nce uninsured motorist coverage is purchased, the insurance consumer is entitled to secure the full extent of the benefit which the law requires to be offered." *Id.* at 1205. The conclusion in *Frank* that "uninsured motorist coverage is properly considered personal to the insured and not vehicle specific" allowed the insured to receive benefits despite that the "other motor vehicle clause" would have allowed none. *Id.* at 1203.

Harleysville latches onto the reasoning that insurance is "personal to the insured" and argues that *Frank* requires this Court to conclude that Ms. Krutz's "person-specific" insurance from Aetna applies before Harleysville's "vehicle-specific" insurance for the Camaro. The Court concludes, however, that the *Frank* holding does not mandate as a matter of Delaware public policy that Aetna's policy be primary. As the Delaware Supreme Court recently noted, "*Frank* stands for the proposition that an insurer may not contract the scope of coverage below the level established by statute." *Graham v. State Farm Mutual Automobile Insurance Co.*, 565 A.2d 908, 911 (Del.1989). Thus, *Frank* does not apply where "the insurer has not attempted to limit coverage in any way." *Id.* Therefore, the reasoning in *Frank* on person-specific insurance only prevented insurance companies from *excluding* coverage for certain claims. The Court is persuaded that *Frank* did not rule on the division of insurance proceeds when there is *full* coverage.

It may be that the reasoning in *Frank* concerning the exclusion of coverage would have an impact in a case where a court must determine the division of responsibility between a pro rata limitation clause and an escape clause. For instance, if one insurer were able to "escape" responsibility for a loss caused by an uninsured motorist, then the policy might "contract the scope of coverage below the level established by

statute." *Id.; see also Grinnell Mutual Reinsurance Co. v. Globe American Casualty Co.*, 426 N.W.2d 635, 638 (Iowa 1988); *State Farm Mutual Automobile Insurance Co. v. United Services Automobile Association*, 211 Va. 133, 176 S.E.2d 327, 330–331 (1970) (both cases drawing a distinction between an escape clause and an excess clause when dividing liability with a pro rata clause). However, the instant case does not present a situation where Aetna will escape coverage.

In this case, "the injured person[ ] [has] no interest in the outcome; we are now concerned only with the responsibility between insurance carriers...." *Aetna Casualty & Surety Co. v. Security Insurance Co. of Hartford*, 267 A.2d 582, 585–86 (Del. 1970). Ms. Krutz is not faced with the prospect of being denied benefits entirely but rather in what order she may potentially receive the maximum benefits of the subject policies. The holding in *Frank* assures Ms. Krutz that her Aetna insurance will be available whenever she is injured by an uninsured or underinsured motor vehicle, while traveling in a non-owned vehicle that may not be insured, and so long as Ms. Krutz is not deprived of some uninsured/underinsured motorist benefits, Delaware's public policy is not threatened. As the Delaware Superior Court recently noted:

> Since the cost of the insurance is based on the insurer's risk of loss, the other-in-surance clause reduces the premium. Since the purchasers of insurance are more likely to purchase uninsured vehicle coverage when the cost is less, the other-insurance clause is consistent with the policy of the Delaware statute. Compare 18 Del.C. § 3902(b)(3). Nor does the other-insurance clause deprive the insured of the coverage he has purchased. The insured will have purchased coverage in a policy containing an other-insurance clause. Moreover, when there is coverage under another policy, the insured will be covered to the extent that he expected, even though that coverage may be provided in whole or in part under someone else's policy.

> *Tampanello v. State Farm Mutual Automobile Insurance Co.*, C.A. No. 85C–JN–16, slip op., 1986 WL 13988 (Del.Super.Ct. December 5, 1986).

Accordingly, the Court must reject Harleysville's public policy argument that the holding in *Frank* regarding "person-specific", rather than "vehicle-specific", insurance requires the driver's insurance to be primary in the situation where the driver is injured in an automobile owned and insured by another.[6]

The Court's conclusion comports with the rule followed in most states regarding the division of liability. As a leading commentator on the subject states:

> Where more than one liability policy covering the same loss is in effect, it has

---

**6.** Section 3902 supports this conclusion. That section of the uninsured/underinsured motorist statute provides, in part:

> No policy insuring against liability arising out of ownership, maintenance or use of *any motor vehicle* shall be delivered or issued in this State with respect to any such *vehicle* registered or principally garaged in this State ...

Del.Code Ann. tit. 18, § 3902(a) (1989). As indicated by the highlighted words, the statute contemplates coverage for motor vehicles, not merely coverage for drivers. In contrast, Delaware's statute regulating driver's licenses does not demand that all drivers be insured—a strong indication that Delaware public policy hinges on insurance of vehicles, rather than on protection for each citizen who has a right to drive.

Furthermore, in order to discern the public policy underlying § 3902, that section must be "viewed in light of existing industry practice".

*O'Hanlon v. Hartford Accident & Indemnity Co.*, 457 F.Supp. 961, 965 (D.Del.1978), *aff'd*, 639 F.2d 1019 (3d Cir.1981). "At the time of the enactment of this statute, and continuing to the present, the consistent practice in the casualty insurance field has been to issue primary automobile liability insurance with respect to specific vehicles whose serial numbers, registration and location are identified in the policy." *Id.* Section 3902(a)'s phrase "with respect to ... any such vehicle registered or principally garaged in this State" thus "suggests that Section 3902 was directed only toward primary automobile insurance policies", *i.e.*, those policies specifically written for a particular motor vehicle. *Id.* Thus, the Court concludes that placing responsibility for primary insurance on the owner of the vehicle in this case comports with Delaware public policy because Harleysville underwrote its insurance for the vehicle involved in the accident.

been held to be the rule that the policy insuring the liability of the owner of an involved vehicle has the primary coverage, especially when the owned vehicle was one described in the policy. In that same vein, the policy of the operator is generally held to be secondary, especially under provisions declaring the policy to be excess as to losses arising from use of a non-owned vehicle....

8 P. Kelly, *Blashfield Automobile Law and Practice*, § 323.11 (rev. 3d ed. 1987); *see also State Farm Mutual Automobile Insurance Co. v. Universal Underwriters Insurance Co.*, 365 So.2d 778, 779–780 (Fla. App.1978) (owner's insurance controls), *cert. denied*, 373 So.2d 462 (Fla.1979). Thus, in the Court's judgment, Delaware public policy considerations are not exasperated by the conclusion that Harleysville's insurance must be deemed to be primary insurance.

## IV. CONCLUSION

For the reasons stated, the Court concludes that Harleysville must be deemed the primary insurer and that Harleysville's motion for summary judgment on that issue must be denied, and Aetna's motion for summary judgment must be granted.

An appropriate Order will be entered.