[No. 21806-2-II.   Division Two.   April 10, 1998.]

YVONNE M. FROST, *Respondent*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant*.

*Christine O. Gregoire, Attorney General*, and *Mattie T. Harvin-Woode, Assistant*, for appellant.

*Brock D. Stiles* of *Stiles & Stiles, Inc., P.S.*, for respondent.

SEINFELD, J. — After Yvonne Frost, an injured worker, collected workers' compensation benefits and then recovered underinsured motorist benefits from a third party, the Department of Labor and Industries (Department) sought reimbursement for benefits it had paid to Frost. The trial court found that the Department was not entitled to reimbursement under RCW 51.24.030(4) because Frost, rather than her employer, Ticor Title Insurance Company, owned the automobile insurance policy. Based on evidence that Ticor was the named insured on the policy and paid the policy premiums, we conclude that the evidence is insufficient to show that Frost, rather than Ticor, owned the policy. Thus, we reverse.

## FACTS

Frost was injured in a car accident on December 20, 1990, while driving a company car assigned to her. Frost used the car to drive to her home in Bend, Oregon, on weekends. During workdays, when she was not using the car, it was available for the use of other employees.

Ticor's insurance policy for its fleet of 541 automobiles listed Ticor as the named insured and provided that

"[a]nyone else 'occupying' a covered 'auto' " was an insured. The policy, which included underinsured motorist coverage (UIM), cost Ticor $295,637 in annual premiums at the rate of $546.46 per vehicle. According to Frost, Ticor deducted $45.25 biweekly from her paycheck to reimburse Ticor for automobile insurance. Her paycheck stubs labeled the deductions as "Auto/Parking."

Because the car accident occurred during the course of her employment, Frost filed a claim under the Industrial Insurance Act, RCW 51. The Department allowed the claim and paid Frost $60,093.44 in benefits.

Frost filed suit against the responsible third party pursuant to RCW 51.24 and recovered $25,000. The Department then asserted a lien and obtained reimbursement from the recovery.

Frost then filed a third party claim against Ticor's underinsured motorist policy and the arbitrators awarded her $300,000, which was reduced by the previously awarded $25,000, for a total additional recovery of $275,000. The Department asserted a lien by an order that distributed the recovery pursuant to RCW 51.24.060: (a) gross recovery $275,000; (b) $107,080.58 for attorney fees and costs; (c) $147,747.09 to Frost; and (d) $20,172.33 to the Department. The order provided the Department would pay no further benefits on Frost's claim until she incurred $64,584.04 in costs as a result of her injuries.

Frost appealed to the Board of Industrial Insurance Appeals (BIIA), which affirmed the Department order. But the superior court reversed the BIIA, ruling that Ticor was not the owner of the UIM policy and that the Department therefore was not entitled to reimbursement from the recovery.

The Department appeals, claiming that the record does not support Frost's contention that she paid the insurance premiums for the car assigned to her or that she "owned" the policy within the meaning of RCW 51.24.030(4).

## ANALYSIS

When hearing an appeal from a BIIA decision, the

superior court holds a de novo hearing based solely on the evidence in the record before the BIIA. *Grimes v. Lakeside Indus.*, 78 Wn. App. 554, 560, 897 P.2d 431 (1995). The BIIA's findings and decision are prima facie correct until the superior court, by a preponderance of evidence, finds them incorrect. *Id.* at 560. In reviewing the superior court's decision, this court's role " 'is to determine whether the trial court's findings, to which error is assigned, are supported by substantial evidence and whether the conclusions of law flow therefrom.' " *Id.* at 560 (quoting *Du Pont v. Department of Labor & Indus.*, 46 Wn. App. 471, 476-77, 730 P.2d 1345 (1986)). The construction of a statute is a question of law that is reviewed de novo. *City of Kennewick v. Benton County*, 131 Wn.2d 768, 771, 935 P.2d 606 (1997).

■ Under Washington's Industrial Insurance Act (Act), workers' compensation benefits are the exclusive remedy against an employer for a worker injured in the course of employment. *Clark v. Pacificorp*, 118 Wn.2d 167, 174, 822 P.2d 162 (1991). The goal of the Act is to provide sure and certain relief to injured workers, not to award full tort damages. *Tallerday v. Delong*, 68 Wn. App. 351, 356, 842 P.2d 1023 (1993).

But there is an exception to the Act's prohibition of any other remedy in RCW 51.24, the third party chapter. *Tallerday*, 68 Wn. App. at 357. Where a worker's injury is due to the negligence of a third party, the worker may elect to sue that third party for damages. RCW 51.24.030. This does not preclude the worker from receiving workers' compensation benefits, but if the third party recovery exceeds the benefits it has paid, the Department is entitled to reimbursement. RCW 51.24.040, .060. The Act provides a lien to enforce the Department's reimbursement right. RCW 51.24.060. This situation also benefits the employer, who receives a credit reflecting the recovery against its assessment for industrial insurance premiums. WAC 296-17-870(4).

■ ■ The third party statute thus accomplishes two things:

First, it makes it possible for the worker to recover full compensation from the party which is legally and in fact responsible for his injuries and consequent damages. Second, it permits the worker to receive the certain compensation and benefits of Industrial Insurance, but mandates reimbursement to the Department so that (1) the accident and medical funds are not charged for damages caused by a third party and (2) the worker does not make a double recovery. In other words, the worker, under the statute, cannot be paid compensation and benefits from the Department and yet retain the portion of damages which would include those same elements.

*Maxey v. Department of Labor & Indus.*, 114 Wn.2d 542, 549, 789 P.2d 75 (1990). The underlying purposes of the Act are defeated if the reimbursement right is defeated, and the worker is made more than whole at the expense of the compensation fund. *Clark*, 118 Wn.2d at 185.

■ The term "third person" in the context of workers' compensation includes insurers liable under policy provisions for underinsured motorist compensation. *Michel v. Department of Labor & Indus.*, 80 Wn. App. 32, 34, 906 P.2d 960 (1995). In the UIM arena, the Act provides a limited exception to the Department's right to reimbursement from third parties in the following circumstances:

(4) Damages recoverable by a worker or beneficiary pursuant to the underinsured motorist coverage of an insurance policy shall be subject to this chapter *only if the owner of the policy is the employer* of the injured worker;

RCW 51.24.030 (emphasis added). Because the reimbursement provisions apply only to recoveries from employer-paid UIM policies, RCW 51.24.030(4), the worker who collects UIM benefits under a policy that does not belong to the employer may obtain a double recovery of both UIM benefits and workers' compensation benefits. *Barney v. Safeco Ins. Co.*, 73 Wn. App. 426, 428 n.2, 869 P.2d 1093 (1994), *overruled on other grounds, Price v. Farmers Ins. Co.*, 133 Wn.2d 490, 946 P.2d 388 (1997); *O'Rourke v. Department of Labor & Indus.*, 57 Wn. App. 374, 382, 788 P.2d 17 (1990).

The issue here is whether Ticor was the owner of the insurance policy covering Frost's company car within the meaning of RCW 51.24.030(4), thereby allowing the Department reimbursement from Frost's recovery of UIM benefits. The trial court apparently relied upon the fact that Ticor deducted $45.25 biweekly from Frost's paycheck, allegedly to cover premiums, as the basis for its conclusion that Frost owned the policy.

The Act does not define the term "owner." *See* RCW 51.08. BLACK'S LAW DICTIONARY defines "owner" in part as "[h]e who has dominion of a thing . . . which he has a right to enjoy and do with as he pleases, even to spoil or destroy it . . . ." BLACK'S LAW DICTIONARY 1105 (6th ed. 1990). The Department argues that the named insured's ability to shape its insurance coverage supports the conclusion that the named insured or policyholder is the owner of the policy.

The record contains the following evidence supporting Frost's claim that she owned the policy: (1) her affidavit in which she stated that "it was . . . agreed that I could use the vehicle provided I paid for the insurance coverage, by a bi-weekly payroll deduction in the amount of $45.25 . . . . The $45.25 deduction was for the automobile insurance, and at no time was I ever charged for any parking . . . or any other auto related expenses"; (2) her testimony before the BIIA in which she said that her supervisor, John Mitchell, told her that she could use a company car to drive back and forth to Bend "providing I paid the insurance on the vehicle";[1] and (3) a memorandum from Mitchell in which he wrote: "[as] we discussed, the bi-weekly payroll deduction will be $45.25, for the assigned company vehicle, and is for automobile insurance coverage"; and (4) the testimony of Duane Gilliland, a certified public accountant.

Gilliland explained that Ticor deducted money from Frost's paycheck to comply with the IRS holding that the personal use of a company car is taxable compensation. 26 C.F.R. § 1.61-21 (1997). IRS regulations require employers

---

[1]Mitchell was deceased at the time of the hearing.

to charge employees for their personal use of a company car based on the annual lease value of the car, in this case $3,350. 26 C.F.R. § 1.61-21.

To comply with IRS regulations, Ticor increased Frost's gross wage on its records by $957, but Frost did not receive additional cash compensation. Ticor then deducted $45 from Frost's paycheck every two weeks as a charge for her personal use of the vehicle. Although we are unable to discern Gilliland's somewhat obscure methodology, we accept his conclusion that Frost paid approximately $1,700, half the annual lease value of the car, over a six-month period. Frost uses these numbers to argue that she bore the entire cost of the company vehicle and reimbursed Ticor for its UIM coverage.

Frost maintains that because she paid for insurance coverage, Ticor did not own the UIM policy. She argues that if the Department had reimbursement rights, Ticor would receive a credit for car insurance that it did not fund, which would be inconsistent with BIIA reasoning in other cases that suggest it is the payment of premiums that gives rise to an employer's ownership of the policy and the resulting right of reimbursement.

The Department does not dispute the idea that the payment of premiums is a strong indication of policy ownership. This idea also has support in the following language from a BIIA decision:

> [I]t is worth noting that the employer here has paid both industrial insurance premiums and premiums for [UIM] coverage. If there were no lien, then not only would the employer have provided two overlapping coverages, but the employer would also lose any benefit with respect to the impact of a third party recovery on the evaluation of actual losses under the claim pursuant to WAC 296-17-870(4).

*In re Goers*, No. 88 0661 at 5, Bd. of Indus. Ins. Appeals (Mar. 13, 1989). Similarly, the court in *O'Rourke* held that if the employer is paying premiums on a UIM policy, it should enjoy the benefit of an adjusted experience rating

because of the recovery. 57 Wn. App. at 382. If the employer is not paying those premiums, "there is no reason why it should necessarily benefit from someone else's UIM policy." *O'Rourke*, 57 Wn. App. at 382.

But the Department contends that the evidence is insufficient to support the trial court's findings that Frost in fact paid the insurance premiums. It points to the substantial sums Ticor paid for the benefits of the UIM policy. Ticor was responsible for annual premiums of $295,000, which included UIM coverage, and was responsible for a deductible of $100,000 in the event of an automobile accident. Ticor paid the deductible to Frost. The policy also required Ticor to pay 50 percent of any expenses incurred relating to a claim settlement. The Department contends that Frost could not be the owner of the UIM coverage because she was not responsible for these costs of ownership.

The Department also claims that the superior court misunderstood Mitchell's statement that the $45 deduction was to pay for "insurance coverage." David Schallhammer, an officer of Ticor and of Chicago Title Insurance Company, Ticor's parent company, testified that the company made the deductions in response to tax law changes that recognized the personal use of company cars as taxable compensation.

Schallhammer added that the amount of the deduction was determined by the value of the car, as shown by a Ticor document that listed the value of the company cars and the corresponding deduction for each value category. He concluded that this scaling of deductions indicates that Ticor did not intend the deductions as reimbursement for insurance premiums.

> The fact that it's a sliding scale would . . . indicate that it was not for insurance purposes, since the insurance amount was fixed, there was no sliding scale [by] which a certain amount per vehicle [was assessed] under the insurance program, the premium was based on a fixed amount and times the number of vehicles.

In support of Schallhammer's testimony, the Department cites a Ticor memorandum discussing "payroll deduction for personal use" and stating that since the vehicle's class was "C," $45.25 would be deducted from the assigned driver's paycheck. The Department maintains that this evidence alone refutes Mitchell's statement that the deductions were to pay for car insurance.

As the Department points out, Frost's own expert, Gilliland, agreed that the purpose of the deductions was to comply with IRS regulations; the deductions were intended to pay for all costs associated with the company cars, not just insurance. He stated:

> In this case it appears that a portion of the total costs are borne by the employee. And so that was what was withheld from her. So, it would again, cover a portion of every single cost of operating, including repairs; gas; insurance; depreciation; the entire bundle of operating costs that we all pay on for our automobiles.

Gilliland could not say how much of the $45 deduction Ticor allocated to any one expense, including insurance. Schallhammer testified that he saw nothing in Ticor's records indicating that any amounts were credited back to the insurance account from the employee deductions.

The Department maintains that Ticor, as the named insured, contracted for the coverage, and that Ticor employees who used the cars were only beneficiaries of that coverage. In addition to the above evidence, it points to Washington law providing that only the named insured or a spouse can reject UIM coverage; insurers do not have an obligation to offer the opportunity to reject UIM coverage to all persons who might become "other insureds." RCW 48.22.030; *Koop v. Safeway Stores, Inc.*, 66 Wn. App. 149, 156, 831 P.2d 777 (1992).

As Frost admitted, she did not select the UIM coverage for the car she was driving because "it was specifically stated that I was covered through Ticor." Frost did not even see a copy of the car insurance policy until after the accident.

Given this evidence, Frost's position was similar to that of a customer renting a car. The fees she paid helped defray the company's costs, but did not make her the owner of the insurance policy. She was merely the potential beneficiary of the company's UIM policy. *See In re Funston*, No. 88 2863, Bd. of Indus. Ins. Appeals (Aug. 16, 1990) (employer, Funston Tire, owned UIM policy issued to employer company and company principals individually with endorsement covering Funston family vehicles, notwithstanding fact that company owner's son recovered UIM benefits as resident of his father's household and not as company employee).

Further, our holding is consistent with those public policies underlying the Industrial Insurance Act that oppose double recoveries, protect the state workers' compensation fund, and allow the employer to "enjoy the benefit of an adjusted experience rating." *O'Rourke*, 57 Wn. App. at 382. Although the Act is to be " 'liberally construed for the purpose of reducing to a minimum the suffering and economic loss arising from injuries and/or death occurring in the course of employment,' " *Clauson v. Department of Labor & Indus.*, 130 Wn.2d 580, 584, 925 P.2d 624 (1996) (quoting RCW 51.12.010), the doctrine of liberal construction is inapplicable where the injured worker's right to benefits is not at issue. *Seattle Sch. Dist. No. 1 v. Department of Labor & Indus.*, 116 Wn.2d 352, 360, 804 P.2d 621 (1991). Here, Frost's right to benefits is not at issue. Rather, the question is whether she will receive a double recovery—both workers' compensation and UIM benefits.

In summary, we conclude that the record lacks substantial evidence that Frost owned the policy. Rather, the evidence supports the BIIA conclusion that Ticor was its owner and should receive the benefit of ownership.

Thus, we reverse and remand to the BIIA for further proceedings consistent with this opinion.

HOUGHTON, C.J., and HUNT, J., concur.

638

Reconsideration denied May 29, 1998.

Review denied at 137 Wn.2d 1001 (1999).