**Rolando Rafael CASTILLO, Plaintiff Below, Appellant,**

v.

**CLEARWATER INSURANCE COMPANY, a Delaware Corporation, Defendant Below, Appellee.**

No. 136, 2010.

Supreme Court of Delaware.

Submitted: Oct. 6, 2010.

Decided: Nov. 22, 2010.

---

34. *Woody v. State,* 765 A.2d 1257, 1261 (Del. 2001).

35. *State v. Heath,* 929 A.2d 390, 411 (Del.Super.Ct.2006).

Timothy E. Lengkeek, Esquire (argued) and Natalie Wolf, Esquire, Young, Conaway, Stargatt & Taylor, LLP, Wilmington, Delaware, for appellant.

Angela Pinto Ross, Esquire and Tara E. Bustard, Esquire, Doroshow, Pasquale, Krawitz & Bhaya, Wilmington, Delaware, and Jeffrey A. Krawitz, Esquire, (argued) Spector, Gadon & Rosen, P.C., Philadelphia, Pennsylvania, for appellee.

Before HOLLAND, BERGER and JACOBS, Justices.

HOLLAND, Justice:

This is an action for underinsured benefits ("UIM") brought by the plaintiff-appellant, Rolando Castillo ("Castillo") against his insurance company, defendant-appellee, Clearwater Insurance Company ("Clearwater"). Castillo, a resident of the State of Delaware, purchased an insurance policy from Clearwater (the "Clearwater Policy"), a Delaware corporation authorized to sell insurance to residents of the State of Delaware.

In this appeal, Castillo argues that the Superior Court erroneously held that the Clearwater Policy validly excluded UIM coverage. We have concluded that Castillo is correct. Therefore, the judgment of the Superior Court must be reversed.

### Statement of Facts

Castillo entered into an independent contractor agreement with International Motor Freight ("IMF") in 2003. As part of the agreement, Castillo was required to purchase "non-trucking liability insurance (minimum $300,000.00)" and provide proof of insurance to IMF. Castillo purchased the required insurance from Clearwater.

Under the agreement, Castillo transported goods using his truck, which was leased to IMF, and a trailer, owned by IMF, from northern New Jersey to the IKEA distribution center in Perryville, Maryland. After delivering goods to IKEA, Castillo's daily routine was to return to his home in Bear, Delaware, after parking the truck and trailer overnight at a location nearby. The following morning, Castillo would then drive the truck and empty trailer from Delaware to northern New Jersey. There, he would receive his daily loan and start the routine again.

On December 7, 2005, after unloading his cargo at the IKEA distribution center in Perryville, Maryland, and on his way home to Bear, Delaware, Castillo sustained multiple traumatic injuries in a motor vehicle accident on Route 40. Castillo also

incurred a significant amount of medical bills and lost wages.

IMF's insurance carrier, National Interstate, indicated IMF's policy did not apply to the accident because IMF did not own the vehicle. The underlying tortfeasor tendered his insurance policy limits and executed an affidavit of no other insurance. Castillo filed a UIM claim with Clearwater that was denied.

### Superior Court Proceeding

The Clearwater Policy provided coverage for a 2002 Volvo truck tractor, which was registered and insured pursuant to title 18, section 3902 of the Delaware Code. Endorsement Number Six, titled "Uninsured Motorist Insurance Endorsement," provides that:

A. COVERAGE

We will pay compensatory damages which an "insured", is legally entitled to recover from the owner or operator of an "Uninsured Motor Vehicle" because of "Bodily Injury":

(1) Sustained by an "insured"; and

(2) Caused by an "accident".

B. WHO IS INSURED

(1) "Named Insured".

(2) Anyone else "occupying" a "covered auto".[1]

Castillo filed a Motion for Partial Summary Judgment, seeking a declaratory judgment from the Delaware Superior Court that Clearwater was obligated to provide UIM benefits under the Clearwater Policy. In its opposition to that motion, Clearwater argued the Clearwater Policy did not apply for several reasons. First, Clearwater relied upon an endorsement titled "Truckers—Insurance for Non–Trucking Use," which provided as follows:

*Liability Coverage* for a covered "auto" described in the Schedule is changed as follows:

1. The following exclusions are added: This insurance does not apply to:

a. A covered "auto" while used to carry property in any business.

b. A covered "auto" while used in the business of anyone to whom the "auto" is rented.

Second, Clearwater relied upon Endorsement Number Four, which provided as follows:

PROPERTY

The transportation of property by "auto" for the generation of economic gain or commercial benefit is defined as "business property," and such transportation is outside the scope of coverage afforded in this policy.

Third, Clearwater argued that the title of the certificate provided with the policy limited coverage. The certificate was titled "Certificate of Non–Trucking Automobile Liability Insurance."

The Superior Court ruled that the Clearwater Policy was valid and characterized that Policy as "a contract whose scope was limited," as distinguished from a UIM exclusion, which the Superior Court recognized would be invalid under title 18, section 3902. Because the Superior Court found there were material issues of fact in dispute, however, it initially declined to dismiss Castillo's complaint.

The parties then filed a proposed Stipulation and Final Order (the "Stipulated Order") with the Superior Court. The Stipulated Order provided that the parties agreed there were no issues of material fact; that Castillo was operating his vehicle pursuant to a lease agreement with

---

1. Del.Code Ann. tit. 18, § 3902.

International Motor Freight ("IMF"), was in the business of IMF and under IMF's direction, control and dispatch at the time of the December 7, 2005 accident; and that the Superior Court decision was a final decision that resolved the entire case in favor of Clearwater and against Castillo. The Stipulated Order, was entered as a final judgment by the Superior Court.

### Statute Mandates Coverage

 Underinsured motor vehicle coverage is treated the same as uninsured coverage ("UM") under title 18, section 3902[2] of the Delaware Code, which provides as follows:

*No policy* insuring against liability arising out of the ownership, maintenance or use of any motor vehicle shall be delivered or issued for delivery in this State with respect to any such vehicle registered or principally garaged in this State unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or hit-and-run vehicles for bodily injury, sickness, disease, including death, or personal property damage resulting from the ownership, maintenance or use of such uninsured or hit-and-run motor vehicle.[3]

Unless rejected in writing by the insured, every liability policy sold pursuant to title 18, section 3902 must include UM/UIM coverage.[4]

### Prior Precedents

This Court first construed section 3902 in the context of a UM/UIM coverage exclusion over thirty years ago. In *State Farm Mut. Auto. Ins. Co. v. Abramowicz,*[5] the issue was whether a policy provision requiring actual physical contact between the insured's vehicle and an uninsured motor vehicle was a valid exclusion.[6] We began our analysis by noting that "[p]rotection against injuries and damages caused by uninsured motorists is an area widely regulated by statute," which "in one sense is so clear that construction is not required."[7] We concluded that the physical contract requirement was invalid under section 3902, holding that "[i]nsurance policy provisions designed to reduce or limit [UM] coverage to less than that prescribed by statute are void."[8]

Ten years later in *Frank v. Horizon Assurance Co.,*[9] this Court had to determine whether an other motor vehicle ("OMV") exclusion was valid.[10] In that case, the insurance company denied UM coverage on the basis that the insured was injured in a vehicle owned by the insured, but not listed as a covered vehicle under the policy.[11] The carrier argued that restrictions or conditions on UM coverage were valid because UM coverage is not required under Delaware law.[12] The insured argued that an insurance carrier may not restrict UM coverage where the

2. *State Farm Mut. Auto. Ins. Co. v. Washington,* 641 A.2d 449, 450–51 (Del.1994).

3. Del.Code Ann, tit. 18, § 3902.

4. *State Farm Mut. Auto. Ins. Co. v. Washington,* 641 A.2d at 450.

5. *State Farm Mut. Auto. Ins. Co. v. Abramowicz,* 386 A.2d 670 (Del.1978).

6. *Id.* at 671.

7. *Id.* at 671–73.

8. *Id.* at 672–73.

9. *Frank v. Horizon Assurance Co.,* 553 A.2d 1199 (Del.1989).

10. *Id.* at 1200.

11. *Id.* at 1201.

12. *Id.* at 1202.

right to reject UM coverage is not exercised by the insured.[13]

In *Frank*, this Court held that the exclusion at issue was invalid because UM coverage is mandatory under title 18, section 3902, unless affirmatively waived in writing.[14] We noted that any restrictions to UM coverage must be specifically authorized by statute.[15] We also held that UM coverage is personal to the insured (as opposed to being dependent on the vehicle the insured was in at the time of injury), noting that the public policy of this state prohibits UM coverage restrictions based on the manner in which the insured is injured.[16]

The holdings in *Abramowicz* and *Frank* were reaffirmed and applied by this Court in *State Farm Mut. Auto. Ins. Co. v. Washington*[17] and *Hurst v. Nationwide Mut. Ins. Co.*[18] Fifteen years ago, in *Hurst*, a UIM case, this Court held that "insurance policy provisions designed to reduce or limit the coverage to less than that prescribed by the Delaware statute, 18 *Del. C.* § 3902, are void. Consequently, any restriction in the scope of coverage section 3902 requires must be specifically authorized by statute."[19] In support of that proposition, we cited the relevant language contained in title 18, section 3902(b) of the Delaware Code, which is the portion of section 3902 regulating UIM coverage. In *Hurst*, we once again stated that "uninsured motorist coverage is personal to the insured and not vehicle specific" and that it is "inimicable to the purpose of Section 3902 to make recovery of supplemental uninsured coverage contingent upon the manner in which the claimant is injured."[20]

 Castillo argues that, taken together, section 3902 and the holdings in our prior cases stand for the following:

(1) UM/UIM is mandatory for all vehicle registered in Delaware, unless rejected in writing;

(2) Policy provisions that reduce or eliminate UM/UIM coverage are void, unless the exclusion is specifically authorized by 18 *Del. C.* § 3902; and

(3) UM/UIM is personal to the insured and not dependent on the vehicle the insured was occupying when he or she was insured.

We agree that each of these propositions asserted by Castillo are correct statements of Delaware law.

### *Clearwater Exclusion Invalid*

 Clearwater successfully argued in the Superior Court that the issue was not whether the exclusion was valid, but whether the Clearwater Policy, which it characterized as a "commercial policy" with a "limited" scope, was "triggered." That characterization is inconsistent with our prior cases that have construed the statutory mandate in section 3902. That section does distinguish between "commercial policies" and "car insurance," but it does not authorize the issuance of a "limited" policy without UM/UIM coverage.

13. *Id.*

14. *Id.*

15. *Id.* at 1205.

16. *Id.* at 1204–05.

17. *State Farm Mut. Auto. Ins. Co. v. Washington,* 641 A.2d 449 (Del.1994).

18. *Hurst v. Nationwide Mut. Ins. Co.,* 652 A.2d 10 (Del.1995).

19. *Id.* at 12.

20. *Id.* at 14.

Section 3902 requires that *every* policy have UM/UIM coverage, unless it is rejected in writing.

Our prior cases hold that section 3902 makes UM/UIM coverage *mandatory* for all vehicles registered in Delaware, unless that coverage is rejected in writing. Castillo did not reject UM/UIM in writing. Where, as here, the insured did not reject UM/UIM, thus making it mandatory, the question becomes whether the General Assembly specifically authorized the exclusion contained in the Clearwater Policy. The policy language at issue in this case is contained in Endorsement Number Four, and reads as follows:

> The transportation of property by "auto" for the generation of economic gain or commercial benefit is defined as "business property," and such transportation is outside the scope of coverage afforded in this policy.

The effect of that language is not materially different from the "carrying passengers for a fee" exclusion held invalid because the General Assembly did not authorize such an exclusion.[21] In *Jeanes v. Nationwide Ins. Co.*,[22] the Court of Chancery held that an insurance policy excluding coverage when the insured was "carrying passengers for a fee" (the insured was injured while driving a DART bus) was invalid because UM coverage is designed to be personal to the insured and not restricted to a certain vehicle.[23]

In this case, the General Assembly has not specifically authorized an exclusion for transporting business property. Accord-

ingly we hold that, the exclusion of UM/UIM insurance coverage from the Clearwater Policy is invalid.

### Conclusion

The judgment of the Superior Court is reversed.

---

**21.** *See Jeanes v. Nationwide Ins. Co.*, 532 A.2d 595, 598–599 (Del.Ch.1987).

**22.** *Jeanes v. Nationwide Ins. Co.*, 532 A.2d 595 (Del.Ch.1987).

**23.** *Id.* at 598. *See also Cropper v. State Farm Mut. Auto. Ins. Co.*, 671 A.2d 423, 426–27

(Del.Super.Ct.1995), *aff'd* 676 A.2d 907 (Del. 1995), where the Superior Court held that an insurance policy clause excluding government-owned vehicles from the definition of an uninsured motor vehicle was invalid under Delaware law because it "limits the scope of uninsured motorist protection to less than that prescribed by statute."