**Bruce BERMEL and Pamela Jurga, husband and wife, Plaintiffs Below, Appellants,**

v.

**LIBERTY MUTUAL FIRE INSURANCE COMPANY, Defendant Below, Appellee.**

No. 224, 2012.

Supreme Court of Delaware.

Submitted: Oct. 24, 2012.
Decided: Dec. 12, 2012.

---

Keith E. Donovan, Esquire (argued) and Allyson Britton DiRocco, Esquire, Morris, James, LLP, Dover, Delaware, for appellants.

Nancy Chrissinger Cobb, Esquire, Chrissinger & Baumberger, Wilmington, Delaware, for appellee.

Before HOLLAND, BERGER, JACOBS and RIDGELY, Justices, and GLASSCOCK, Vice Chancellor,[1] constituting the Court en Banc.

HOLLAND, Justice:

The plaintiff-appellants, Bruce Bermel ("Bermel") and Pamela Jurga ("Jurga"), as husband and wife,[2] appeal from the final judgment of the Superior Court granting

---

1. Sitting by designation pursuant to Del. Const. art. IV, § 12 and Supr. Ct. R. 2 and 4.

2. Jurga's claim is for the loss of consortium. Any claim Jurga has to access the underinsured motorist benefits contained in

the motion for summary judgment of the defendant-appellee, Liberty Mutual Fire Insurance Company ("Liberty"). The appellants contend that the Superior Court erred by granting summary judgment in favor of Liberty. Bermel was injured in an automobile accident when his personally-owned and insured motorcycle was struck head-on by another driver. Bermel, then an employee of the Siemens Corporation ("Siemens"), contends that the business policy issued to Siemens by Liberty (the "Liberty Policy"), on a company car that was assigned for his business and personal use, provided him with $100,000 in underinsured motorist coverage even when he was operating a non-work vehicle in circumstances unrelated to his employment.

Bermel brought this action for underinsured benefits ("UIM") against Liberty. First, Bermel argues that the Liberty Policy covering the company car he used was personal to him, even though Siemens was the named insured. According to Bermel, excluding coverage based on the vehicle being occupied at the time of the accident is tantamount to an impermissible "other motor vehicle" exclusion. Second, Bermel argues that he is entitled to personally access the Liberty Policy because Siemens automatically deducted a nominal fee from his paycheck for his personal use of the vehicle assigned to him that was insured by the Liberty Policy. Finally, Bermel argues that the Liberty Policy is ambiguously drafted and should be construed in his favor.

We have concluded that the Superior Court correctly found Siemens, and not Bermel, to be the named insured on the Liberty Policy. We have also concluded

the Superior Court properly ruled that the nominal fee charged to Bermel by Siemens for the use of the car did not make Bermel a named insured under the Liberty Policy. Finally, we have concluded that the Liberty Policy is unambiguous. Therefore, the judgments of the Superior Court must be affirmed.

### Facts

On June 8, 2008, Bermel, a resident of Delaware, was injured when his personally-owned and insured 2001 Harley Davidson motorcycle was struck by another vehicle in the Town of Deerpark in Orange County, New York. There is no dispute that for purposes of this appeal, the other driver ("the tortfeasor") was at fault. As a result of his injuries, Bermel remained an in-patient at the Westchester Medical Center until July 14, 2008,[3] and his medical expenses exceeded $800,000.

The tortfeasor was insured by Progressive Preferred Insurance Company ("Progressive") with bodily injury liability limits of $25,000. Progressive paid Bermel the $25,000 liability policy limits. Three other vehicles were identified as potentially having underinsured motorist coverage to further compensate Bermel for his injuries: a Chrysler 300 (insured under the Liberty Policy), Bermel's motorcycle (insured by Foremost Insurance Company ("Foremost")), and Jurga's Honda Accord (insured by Amica Mutual Insurance Company ("Amica")).

Amica paid its UIM policy limits of $300,000. Foremost paid its UIM policy limits of $15,000. Liberty denied coverage to Bermel on the ground that Bermel was not a covered insured under the Liberty Policy when he was operating a personally-

---

the Liberty Mutual Insurance Company policy at issue are contingent upon Bermel first receiving benefits under the same policy.

**3.** According to Bermel, his injuries included multiple fractures, a tibial artery laceration, a closed head injury, acute respiratory failure, and pulmonary edema requiring a tracheostomy tube.

owned motorcycle unrelated to the course or scope of his employment with Siemens.

### The Liberty Policy

At the time of the accident, Bermel was employed by Siemens. Bermel's employment with Siemens began in 1978. In 1978, Bermel was employed by DuPont's medical diagnostics division. In 1996, that division was sold by DuPont to Dade International. A year later, Dade International merged with Behring Diagnostics, resulting in a company called Dade Behring. In 2007, Dade Behring was purchased by Siemens. Because the transactions were a series of corporate acquisitions, Bermel can be considered an employee of Siemens for the entire period.

Beginning in the mid–1980s, Bermel's compensation package provided for a company car. Those cars included the Chrysler 300 Bermel had access to at the time of the accident. Bermel was permitted to use the Chrysler 300 for business and personal use. The record reflects that until his retirement from Siemens, Bermel never owned a separate personal car. Siemens deducted a minimal amount of money from Bermel's paycheck to cover the personal use of the Chrysler 300.

The Chrysler 300 was part of a Siemens fleet of cars and was insured on a Business Auto Policy issued by Liberty. The named insured on that Business Auto Policy was "Siemens Corporation, Advanced Burner Technologies, Bridges Electric, and Siemens IT Solutions & Services." Bermel was not personally named on the Liberty Policy issued to Siemens, nor did he pay any portion of the insurance premiums.

The parties agree that at the time of the accident, Bermel was not acting in the course or scope of his employment. It is also undisputed that Bermel's 2001 Harley Davidson motorcycle was not a replacement vehicle for the Chrysler 300, which was operational at the time of the accident.

### The Superior Court Action

In a letter dated October 15, 2009, Liberty denied UIM coverage to Bermel. On June 8, 2010, the plaintiffs filed a complaint against Liberty in the Superior Court, alleging that they were entitled to $100,000 in UIM benefits under the Liberty Policy. In response, Liberty simultaneously filed an answer and a motion for summary judgment, on July 27, 2011. The plaintiffs filed their opposition to that motion on October 3, 2011. The Superior Court heard oral argument on October 7, 2011, and requested supplemental submissions from the parties on December 15, 2011.

On March 29, 2012, the Superior Court granted Liberty's motion for summary judgment. The Superior Court determined that the exclusionary language of the policy was consistent with our decision in *Frank v. Horizon Assurance Co.*[4] The Superior Court further determined that Bermel was not a named insured under the terms of the Liberty Policy, that the nominal fee deduction did not convert Bermel into a named insured, and that the policy was unambiguously drafted. Therefore, the Superior Court held that the plaintiffs could not access the UIM coverage under the Liberty Policy and granted summary judgment in favor of Liberty. Bermel and Jurga filed a timely direct appeal with this Court.

### Standard of Review

We review a trial court's decision to grant summary judgment, and questions of law, *de novo.*[5] To the extent that this

4. *Frank v. Horizon Assurance Co.*, 553 A.2d 1199 (Del.1989).

5. *LeVan v. Independence Mall, Inc.*, 940 A.2d 929, 932 (Del.2007); *Phillips Home Builders,*

Court reviews the judicial construction of a statute, our review is also *de novo* to determine whether the Superior Court "erred in formulating or applying legal precepts." [6]

### Underinsured Motorist Statute

■ Underinsured motorist vehicle coverage is treated the same as uninsured ("UM") coverage under title 18, section 3902(a) of the Delaware Code ("Section 3902"),[7] which provides as follows:

> No policy insuring against liability arising out of the ownership, maintenance or use of any motor vehicle shall be delivered or issued for delivery in this State with respect to any such vehicle registered or principally garaged in this State unless coverage is provided therein or supplemental thereto *for the protection of persons insured thereunder* who are legally entitled to recover damages from owners or operators of uninsured or hit-and-run vehicles for bodily injury, sickness, disease, including death, or personal property damage resulting from the ownership, maintenance or use of such uninsured or hit-and-run motor vehicle. (emphasis added).

Section 3902 requires UM/UIM coverage to be provided to a named insured unless it is affirmatively waived.[8] However, a claimant may recover under the statute only if they fall within the class of persons protected by the statute.[9]

### Frank v. Horizon Assurance Co.

This Court has held previously that other motor vehicle ("OMV") exclusions, which bar uninsured or underinsured motorist benefits to *named insureds* for claims involving owned vehicles not insured under that policy, are void under the Delaware Underinsured Motorist Statute.[10]

In *Frank v. Horizon Assurance Co.*, Julie Frank ("Frank") sought recovery from Horizon Assurance Company ("Horizon") for uninsured motorist benefits arising from an accident that occurred while she was in a family-owned 1978 Toyota, which was insured by the Hartford Insurance Company.[11] At the time of the accident, Frank and her husband jointly owned two other automobiles: a 1970 Ford and a 1979 Chevrolet. These vehicles were insured under a Horizon policy that contained an OMV exclusion—that is, the exclusion explicitly disclaimed UM/UIM coverage arising from an accident occurring in a vehicle that was owned by Frank, but was not listed under that Horizon policy.[12]

In *Frank*, we held that OMV exclusions were incompatible with statutorily created uninsured motorist insurance, because uninsured motorist coverage was personal to the insured and public policy prohibited the limiting of coverage based on the manner the insured was injured.[13] In support of our holding, we stated that "Frank seeks only coverage for which she, or her husband with whom she shares co-insured identity, has paid a premium.... Once uninsured motorist coverage is purchased, the insurance consumer is entitled to secure the full extent of the benefit which the law requires to be offered." [14]

---

*Inc. v. Travelers Ins. Co.*, 700 A.2d 127, 129 (Del.1997).

**6.** *White v. Liberty Ins. Corp.*, 975 A.2d 786, 788 (Del.2009) (internal citations omitted).

**7.** *Castillo v. Clearwater Ins. Co.*, 8 A.3d 1177, 1180 (Del.2010).

**8.** *Id.*

**9.** *White v. Liberty Ins. Corp.*, 975 A.2d at 788.

**10.** *Frank v. Horizon Assurance Co.*, 553 A.2d at 1205 (Del.1989).

**11.** *Id.* at 1200.

**12.** *Id.* at 1201.

**13.** *Id.* at 1202.

**14.** *Id.* at 1205. We have since affirmed *Frank*, first in *State Farm Mut. Auto. Ins. Co.*

### Bermel Is Not A Named Insured Under the Liberty Policy

■ Central to our holding in *Frank* is the requirement that the plaintiff be a named insured to have an expectation of benefits (including UM/UIM coverage) under a relevant policy. Bermel is not a named insured and has not paid any insurance premium for the Liberty Policy. Under these circumstances, Bermel cannot claim any expectation of insurance coverage.

Section 3902 limits UM/UIM coverage to the "protection of persons insured." Our holdings since *Frank* have all comported with this interpretation of the statute. When an insured pays a premium for UIM coverage, he expects that bargained-for coverage to provide UIM coverage even in other motor vehicles.

Bermel had no such expectation. He was not a named insured on the Liberty Policy issued to and paid-for by Siemens. Instead, the named insured was "Siemens Corporation, Advanced Burner Technologies, Bridges Electric, and Siemens IT Solutions & Services." Bermel was not named anywhere in the Liberty Policy, nor was he acting in his capacity as a covered employee when he was injured in New York.

Bermel was not operating the Chrysler 300 or operating a substitute motor vehicle in place of the Chrysler 300. Because Bermel was not a named insured and otherwise had no connection to the Liberty Policy or the Chrysler 300 (a covered automobile) on the date of the accident, he cannot claim any expectation reliance on the Liberty Policy UIM coverage. Therefore, Liberty's denial of that coverage does not violate the public policies advanced by Section 3902.

■ Bermel also asserts that because the Liberty Policy limits coverage to "[a]nyone 'occupying' a covered 'auto'" that this language is tantamount to an impermissible OMV exclusion because the coverage only applies when one (Bermel) is occupying a Siemens fleet automobile. We agree that coverage under this business policy only applies when an individual is occupying a fleet automobile or a replacement vehicle. We disagree, however, that this is tantamount to an OMV exclusion.

Bermel is not the insurance consumer and did not purchase the Liberty insurance. As explained below, his biweekly paycheck deduction was for his use of the automobile and was not a contribution to insurance premiums. Because Bermel was not a named insured and has no expectation that the Liberty Policy extended to his personal use of other, privately-insured motor vehicles, the language of the Liberty Policy cannot be read as an impermissible other motor vehicle exclusion.

### Consideration Paid By Bermel

■ Bermel next asserts that because Siemens automatically deducted a nominal fee from his paycheck as consideration for personal use of the Chrysler 300, he should be entitled to coverage under the Liberty Policy. In support of this argument, Bermel relies on *State Farm Mut. Auto. Ins. Co. v. Nalbone*[15] and *Adams v. Delmarva*

---

v. *Washington*, 641 A.2d 449 (Del.1994), and later in *Hurst v. Nationwide Mut. Ins. Co.*, 652 A.2d 10 (Del.1995). In *Hurst*, we again stated that "[u]ninsured motorist coverage is personal to the insured" and that it is "inimicable to the purpose of Section 3902 to make recovery of supplemental uninsured coverage contingent upon the manner in which the claimant is injured." *Hurst*, 652 A.2d at 14. We again affirmed this principle recently in *Castillo v. Clearwater Ins. Co.*, 8 A.3d at 1181 ("UM/UIM is personal to the insured and not dependent on the vehicle the insured was occupying when he or she was in[j]ured.").

**15.** *State Farm Mut. Auto. Ins. Co. v. Nalbone*, 569 A.2d 71 (Del.1989).

*Power & Light Co.*[16]

In *Nalbone*, we concluded that an employee (Brenda Nalbone) who received benefits under a wage continuation plan could not also recover for those lost wages under the No–Fault policy issued to her by State Farm.[17] Important to our holding was that because Brenda Nalbone did not contribute to the wage continuation plan, she had no expectation of a double recovery:

If the insured has paid consideration for recovery from a collateral source, then recovery should be allowed. If the collateral payments are received *gratis*, then their receipt should bar recovery under the no-fault policy. In the latter instance, the insured has lost nothing, neither wages nor consideration paid to a collateral source for wage compensation. Accordingly, the insured has no loss for which his insurer should provide compensation.[18]

In *Adams*, the question was whether an employer's workers' compensation insurer was entitled to a set-off for payments made to the employee by the employer's own underinsured motorist insurer.[19] We held that because the employee had paid consideration for the insurance coverage, the set-off was against public policy because the employee had sought, by contract, to provide additional protection for himself.[20]

These cases are inapplicable to the case *sub judice*. In both *Nalbone* and *Adams*, the issue turned on the individual's contribution to an insurance plan. Here, we have to determine whether Siemens' nominal charge to Bermel for personal use of the Chrysler 300 is relevant to his claim of rights under the Liberty Policy. No facts in the record suggest that the nominal personal use fee established that Bermel "purchased" insurance on the Chrysler 300 or that the use fee converted him into a named insured under the Liberty Policy. There is no claim or evidence that the personal use fee was ever applied to cover insurance premiums for the Liberty Policy.

The issue presented by Bermel raises a question of first impression in Delaware. On that issue, the opinion in *Frost v. Dep't of Labor and Indus. of the State of Washington*,[21] from the Washington Court of Appeals, is instructive. In *Frost*, the issue was whether the injured employee, Yvonne Frost ("Frost"), or the employer, Ticor Title Insurance Company ("Ticor"), owned the automobile insurance policy.[22] Frost was injured while driving a company car assigned to her.[23]

Ticor's insurance policy for its fleet of 541 automobiles listed Ticor as the "named insured" and provided that "[a]nyone else 'occupying' a covered 'auto'" was an insured.[24] Ticor deducted $45.25 biweekly

**16.** *Adams v. Delmarva Power & Light Co.*, 575 A.2d 1103 (Del.1990).

**17.** *State Farm Mut. Auto. Ins. Co. v. Nalbone*, 569 A.2d at 71.

**18.** *Id.* at 75.

**19.** *Adams v. Delmarva Power & Light Co.*, 575 A.2d at 1104.

**20.** *Id.* at 1107.

**21.** *Frost v. Dep't of Labor and Indus. of the State of Washington*, 90 Wash.App. 627, 954 P.2d 1340 (1998).

**22.** *Id.* at 1341.

**23.** The narrow issue in that appeal was whether the Department of Labor and Industries could properly seek reimbursement for benefits it had paid to Frost. Because Frost was involved in an automobile accident in a company car, there is no dispute that the policy applied. Instead, the issue was one of policy ownership.

**24.** *Id.*

from Frost's paycheck, but the parties disputed whether the purpose of this deduction was to cover insurance premiums or only to cover Frost's personal use of the car.[25] The Washington Court of Appeals concluded that the evidence was insufficient to find that the deductions were for insurance premiums.[26]

Had the court concluded the payments were to defray insurance premium costs, Frost would have been the owner of the policy (and Ticor would have lost the right to seek reimbursement). Instead, the court determined that Frost, in reimbursing Ticor for the value of the personal use of the company car, was in a position similar to that of a customer renting a car.[27] As such, she did not own the insurance policy issued to Ticor, but was merely a potential beneficiary of the insurance coverage provided to Ticor.

In this case, there is no dispute that the deductions from Bermel's paychecks were only to defray the costs associated with his personal use of the Chrysler 300. In fact, Bermel admits that "Siemens systematically deducted money from [my] pay to cover the personal use of the vehicle." The record supports the Superior Court's determination that the deduction from Bermel's pay by Siemens was not used to defray costs of insurance premiums associated with the Liberty Policy. Accordingly, Bermel was properly determined not to be a *de facto* named insured under the Liberty Policy.[28]

There is no rational basis to impute coverage for Bermel under the Liberty Policy solely because of generic payments to Siemens for personal use of the company car by Bermel that were unknown to Liberty. If Bermel wanted personal coverage under Siemens' Liberty Policy, he should have sought to be added as an additional named insured. That request (if granted) would have provided Bermel with coverage and given Liberty the opportunity to charge an additional premium for that increased risk.

### The Liberty Policy Is Unambiguous

Bermel next argues that the Liberty Policy is ambiguous because the named insured (Siemens) is a corporation that cannot sustain bodily injury or have family members. Ambiguity exists in insurance contracts where the language is reasonably susceptible to at least two different meanings.[29] When ambiguity exists, language is typically construed against the drafter and in accordance with the reasonable expectations of the insured.[30] However, where the language in insurance contracts is unambiguous, the language is given its plain and ordinary meaning.[31]

Because the named insured in this case is a corporation, the issue is whether the insuring clauses and their related definitions are ambiguous.

The Liberty Policy delineates who is a named insured:

**25.** *Id.* at 1343.

**26.** *Id.* at 1344–45.

**27.** *Id.*

**28.** We do not address whether this case would have been different if Bermel could have proven that his biweekly car payments were made as contributions to Siemens' insurance premiums. To the extent that the court in *Frost* concluded that such payments made to the employer necessarily bind the

insurance company, that conclusion is not adopted here.

**29.** *Rhone–Poulenc Basic Chems. Co. v. American Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del.1992).

**30.** *Hallowell v. State Farm Mut. Auto. Ins. Co.*, 443 A.2d 925, 926 (Del.1982).

**31.** *O'Brien v. Progressive N. Ins. Co.*, 785 A.2d 281, 288 (Del.2001).

B. Who is an Insured

If the Named Insured is designated in the Declarations as:

1. An individual, then the following are "insured":

    a. The Named "Insured" and any "Family Members".

    b. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto." The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

    c. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

    a. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto." The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

    b. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

    c. The Named Insured for "property damage" only.

We have previously determined that a corporation can neither have "family members" nor suffer "bodily injury," and that such policy language is ambiguous.[32] In this case, however, the Liberty Policy states that if the named insured is a corporation, as is the case here, then an "insured" is anyone occupying a covered automobile, or a replacement for a covered automobile, at the time of the accident. This language unambiguously describes the parameters of who is covered by the Liberty Policy. The lone reference to bodily injury in section B.2(b) does not render the Liberty Policy unambiguous.[33]

Further, the Liberty Policy is clear that family members are included as insureds only when the "named insured" is an individual. Therefore, Bermel's assertion that the Liberty Policy is ambiguous because the term "family member" is defined in a later section of the policy is unavailing. The fact that the Liberty Policy includes a subsequent superfluous reference to familial relationships, which is clearly inapplicable here, does not render the policy ambiguous.

■■■■■ Alternatively, and in any event, even if the references to "bodily injury" and "family member" rendered the Liberty Policy ambiguous, Bermel still would not have a right to recover UM/UIM benefits. A determination that the Liberty Policy was ambiguous would require this Court to undertake a "reasonable expectations" analysis, under which Bermel could not prevail:

> [T]he Court will look to the reasonable expectations of the insured at the time when he entered into the contract if the terms thereof are ambiguous or conflicting, or if the policy contains a hidden trap or pitfall, or if the fine print takes away that which has been given by the large print. But the doctrine is not a rule granting substantive rights to an insured when there is no doubt as to the meaning of policy language.[34]

---

**32.** *Fisher v. Nat'l Union Fire Ins. Co. of Pittsburgh,* 1997 WL 817893, at *3 (Del.Super.Ct. Dec. 11, 1997), *aff'd,* 719 A.2d 490 (Del.1998).

**33.** *See Del Collo v. Houston,* 1986 WL 5841, at *4 (Del.Super.Ct. May 7, 1986) ("A reasonable person would know that a corporation cannot sustain bodily injury. . . .").

**34.** *Hallowell v. State Farm Mut. Auto. Ins. Co.,* 443 A.2d at 927.

In a few cases, the Superior Court has found business automobile insurance policies to be ambiguous. Those decisions concluded that UM/UIM coverage was warranted when the plaintiffs were listed as designated drivers and/or had sustained injuries in furtherance of their employment.[35] In those circumstances, the court held, the plaintiffs had a reasonable expectation that the business automobile insurance policies, including the relevant UM/UIM coverage, would cover them.

Conversely, in *Ruggiero v. Montgomery Mut. Ins. Co.*,[36] even though that policy was also determined to be ambiguous, the Superior Court determined that the injured employee had no reasonable expectation of coverage because she was not working for her employer or driving a company-owned vehicle at the time of the accident.[37] As that court stated, it was "not reasonable to believe that [the employer] intended [the employee] to be covered under the policy while she was engaged in personal activities and driving her own vehicle."[38] In Bermel's case, the Superior Court found this analysis from *Ruggiero* to be persuasive. We agree and reach the same conclusion in Bermel's case.

### Conclusion

The judgments of the Superior Court are affirmed.

---

35. *See, e.g., Harleysville Mut. Ins. Co. v. Grzbowski*, 2002 WL 1859193, at *2 (Del.Super.Ct. Aug. 9, 2002); *Fisher v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 1997 WL 817893, at *4 (Del.Super.Ct. Dec. 11, 1997), *aff'd*, 719 A.2d 490 (Del.1998).

36. *Ruggiero v. Montgomery Mut. Ins. Co.*, 2004 WL 1543234 (Del.Super.Ct. June 28, 2004).

