**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT



DEC 31 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| CERTAIN INTERESTED UNDERWRITERS AT LLOYD'S, LONDON,<br><br>    Plaintiff–Counter-Defendant–Appellee,<br><br>v.<br><br>BEAR, LLC,<br><br>    Defendant–Counter-Claimant–Third-Party Plaintiff–Appellant,<br><br>v.<br><br>MARSH USA INC.,<br><br>    Third-Party Defendant–Appellee. | No. 18-55668<br><br>D.C. No. 3:15-cv-00630-BTM-BLM<br><br>MEMORANDUM* |

Appeal from the United States District Court
for the Southern District of California
Barry T. Moskowitz, District Judge, Presiding

Argued and Submitted December 11, 2019
Pasadena, California

Before: N.R. SMITH and WATFORD, Circuit Judges, and KORMAN,** District
Judge.

---

\*      This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\*      The Honorable Edward R. Korman, United States District Judge for
the Eastern District of New York, sitting by designation.

Bear, LLC ("Bear") appeals from the district court's grant of summary judgment in favor of Certain Interested Underwriters At Lloyd's, London ("Underwriters"), disposing of all claims between Bear and Underwriters. Bear also appeals from the district court's judgments in Bear's third-party action against Marsh USA Inc. ("Marsh"), disposing of parts of that action at summary judgment, and of the rest after a bench trial. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

**1.** The district court properly held that the all-risk marine insurance contract (the "Policy") between Bear and Underwriters did not cover Bear for the fire that destroyed its yacht. The Policy contained a provision (the "Repair Clause") that purported to require Bear to obtain Underwriters' "prior agreement" when, *inter alia*, the yacht would undergo "major . . . repairs" or "hot work . . . (other than soldering)," or when the yacht was in a shipyard that "requested a waiver of subrogation." The Repair Clause further purported to "reserve [Underwriters'] rights to . . . charge an appropriate additional premium" as consideration for its agreement. The fire was caused by hot work (either welding or grinding) performed on the yacht as part of a major repair (the "Repair") at a shipyard that had asked Bear for a waiver of subrogation. Bear never obtained, and never attempted to obtain, any agreement from Underwriters related to the Repair prior to the fire.

The parties disagree over whether the Repair Clause should be classified as a

warranty or an exclusion, but we need not decide that issue. Regardless of how it is classified, the Repair Clause, read in the context of the entire Policy and applied to the facts of this case, unambiguously expresses an intent that, absent an additional agreement, Underwriters would have no obligation to cover damage to the yacht arising from the circumstances of the Repair. *See O'Brien v. Progressive N. Ins. Co.*, 785 A.2d 281, 288, 291 (Del. 2001). Thus, the Repair Clause's plain meaning entitled Underwriters to deny coverage for the fire.[1]

Bear also argues that the Repair Clause is unenforceable because it renders coverage illusory and violates the reasonable expectations of the average yacht owner. This argument is unavailing for two reasons. First, Bear has not established that the Repair Clause vitiates the coverage offered by any of the Policy's insuring provisions to an extent that renders the coverage illusory. *Cf. First Bank of Del., Inc. v. Fid. & Deposit Co. of Md.*, 2013 WL 5858794, at *8–9 (Del. Super. Ct. Oct. 30, 2013).

---

[1] When Bear's counsel was asked at oral argument what difference it would make whether or not the Repair Clause were classified as a warranty, Bear's counsel did not address the distinction between warranties and exclusions. Oral Arg. 3:03–6:11. Instead, he responded that, if the Repair Clause is not a warranty, but rather a "condition precedent" requiring only certain notice to Underwriters, Underwriters would be required to establish that they were prejudiced by the lack of notice. *Id.* But, as Bear's counsel later conceded, Oral Arg. 47:37–48:28, the Repair Clause could only have any chance of being construed as a notice requirement if it were held ambiguous and extrinsic evidence were considered.

Second, even if Bear had established that the Repair Clause rendered certain coverage illusory, the Repair Clause would still be enforceable because its enforcement could not violate any reasonable expectation that Bear had at the time it entered the Policy. When an insurance policy contains "conflicting" terms or "a hidden trap or pitfall," Delaware courts "will look to the reasonable expectations" not, as Bear contends, of the average consumer, but rather "of the insured at the time when he entered into the contract." *Hallowell v. State Farm Mut. Auto. Ins. Co.*, 443 A.2d 925, 927 (Del. 1982); *accord Bermel v. Liberty Mut. Fire Ins. Co.*, 56 A.3d 1062, 1071–72 (Del. 2012) (quoting *Hallowell*); *see also Axis Reinsurance Co. v. HLTH Corp.*, 993 A.2d 1057, 1064–65 (Del. 2010). Bear is a sophisticated party and had a "duty to read" the Policy. *Hallowell*, 443 A.2d at 928. Bear also received several clear and conspicuous warnings from its broker before entering the Policy that should have disabused Bear of any expectation of coverage under circumstances like those from which the fire arose.[2]

**2.** Turning to Bear's third-party action against its broker, Marsh, the district court properly held at summary judgment that Patrice Grossinger owed no duty to Bear. Grossinger was a Marsh employee who served Larry Jodsaas, the owner of

---

[2] Among the warnings Bear received were documents stating "**NO COVERAGE** is provided in respect of refit, alteration, rebuild, remodeling, major repairs, any and all <u>hot work</u> other than soldering, **OR** <u>where the yard has requested any waiver of subrogation</u>."

Bear, solely as a personal lines broker, assisting him with homeowners and automobile insurance. She never had anything to do with the insurance of Bear's yacht and had never seen the Policy or any communications about it involving Bear's yacht insurance broker, who was also a Marsh employee.

Nevertheless, Bear argues that Grossinger owed Bear a duty as its agent or subagent. But, contrary to Bear's position, even assuming *arguendo* that Marsh was Bear's agent, the mere fact that Grossinger was a Marsh employee did not automatically render her Bear's agent or subagent. *See J.P. Morgan Sec., LLC v. Geveran Investments Ltd.*, 224 So. 3d 316, 329 (Fla. Dist. Ct. App. 2017). Subagency requires that an agent properly appoint the subagent to act on the principal's behalf. *See Bellaire Sec. Corp. v. Brown*, 124 Fla. 47, 75 (1936); *Segars v. State*, 94 Fla. 1128, 1134–35 (1927). Since there is no evidence that anyone ever appointed Grossinger to act on Bear's behalf, Grossinger was not Bear's agent or subagent.

Bear also argues that, pursuant to the "undertaker's doctrine," Grossinger owed Bear a duty that sprang into existence the moment she allegedly "undertook" to advise Jodsaas about the yacht's insurance during a phone call the day before the fire. However, this "undertaker's doctrine" theory was never raised below, and implicates a host of new issues, including a potential conflict-of-law issue, that Bear did not adequately brief. Thus, we deem this theory forfeited. *See Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 546 n.15 (9th Cir. 1991) ("It is

well established that an appellate court will not reverse a district court on the basis of a theory that was not raised below."); *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929–30 (9th Cir. 2003). Moreover, even if we were to consider it, the theory appears to lack merit, as Bear fails to cite authority showing that the undertaker's doctrine would be triggered here, where there is no evidence that Grossinger ever made any promise or other kind of commitment to render advice regarding the yacht's insurance.

**3.** The district court also properly held at summary judgment that Marsh satisfied its duty to explain the Policy to Bear. We agree with Bear that the district court should not have construed Florida law to divide broker liability claims into those based on the "duty to inform and explain" and those based on the "duty to advise and recommend," *see Certain Interested Underwriters at Lloyd's, London v. Bear, LLC*, 260 F. Supp. 3d 1271, 1280, 1283 (S.D. Cal. 2017). Nevertheless, the record at summary judgment established that Marsh had given Bear several explanations and warnings about the Policy, and explicitly about the Repair Clause in particular. Thus, there was no genuine factual dispute concerning whether Marsh provided Bear with adequate information and explanation about the Policy.

**4.** After conducting a bench trial on Marsh's potential liability for breaching a duty to reasonably advise Bear of its insurance options and recommend other insurance policies (i.e. the "Chubb" and "SRL" policies), the district court properly

held that Marsh is not liable. We agree with Bear that the requirement imposed by the district court of a "rare," "special relationship," *Bear, LLC v. Marsh USA, Inc.*, 2018 WL 1905458, at *5–6 (S.D. Cal. Apr. 20, 2018), was unmoored from Florida law. While the nature of the broker-client relationship is relevant to the scope of brokers' duties under Florida law, *see Adams v. Aetna Cas. & Sur. Co.*, 574 So. 2d 1142, 1156 (Fla. Dist. Ct. App. 1991), we are not convinced that Florida strictly limits any duty to reasonably give advice and make recommendations to those brokers who have rare, special relationships with their clients. *See Warehouse Foods, Inc. v. Corp. Risk Mgmt. Servs., Inc.*, 530 So. 2d 422, 423–24 (Fla. Dist. Ct. App. 1988); *Seascape of Hickory Point Condo. Ass'n, Inc., Phase III v. Associated Ins. Servs., Inc.*, 443 So. 2d 488, 491 (Fla. Dist. Ct. App. 1984). Thus, we disregard the portion of the district court's post-trial Findings Of Fact And Conclusions Of Law concerning the nature of the relationship between Bear and Marsh.

Yet, even if Marsh owed Bear a duty to reasonably advise and recommend, the district court's judgment in Marsh's favor is adequately supported by its finding that Marsh did not breach that duty in a manner that damaged Bear. Contrary to Bear's suggestion that the district court applied the wrong standard of care, the district court held Marsh to the standard of what "a reasonable broker" would have done, *Bear*, 2018 WL 1905458, at *7, which is consistent with the case Bear cites on this issue, *Warehouse Foods*, 530 So. 2d at 423 ("[a]n agent is required to use

reasonable skill and diligence"). While the district court did not directly rule on what Bear describes as its claim for negligent procurement, the court rightly concluded that the Policy was adequate for Bear's expressed needs, *see id.*, including the planned yard visit Bear noted in its application. *See Bear*, 2018 WL 1905458, at *6–8. And the district court correctly held that Bear bore the burden to show that it would have recovered $17,250,000 (the damages sought) under the Chubb policy and/or the SRL policy if Marsh had given Bear reasonable advice and recommendations. *See Mondesir v. Delva*, 851 So. 2d 187, 189 (Fla. Dist. Ct. App. 2003); *Capell v. Gamble*, 733 So. 2d 534, 535 (Fla. Dist. Ct. App. 1998); *D.R. Mead & Co. v. Cheshire of Fla., Inc.*, 489 So. 2d 830, 831 (Fla. Dist. Ct. App. 1986).

Also contrary to Bear's position, the district court did not violate the law of the case, by—after holding at summary judgment that the Repair Clause unambiguously required Underwriters' agreement to cover the Repair—crediting a Marsh broker's trial testimony suggesting that, hypothetically, notwithstanding the Repair Clause, Bear would have received coverage for the Repair if it had only notified Underwriters of the accident that required the Repair to be done. Bear's argument fails at the outset because "[t]he law of the case doctrine does not . . . bar a court from reconsidering its own orders before judgment is entered or the court is otherwise divested of jurisdiction over the order." *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1042 (9th Cir. 2018). Moreover, since the unambiguous text of

the Repair Clause was dispositive of Bear's contract dispute with Underwriters, but not of Bear's tort claims against Marsh, the district court's rulings are not incompatible with each other.

**5.** Finally, the district court did not abuse its discretion by denying Bear's Rule 59 motion seeking to revisit whether the Repair Clause allowed Underwriters to deny coverage for the fire. Among other things, the new evidence upon which the motion was based—the testimony described in the preceding paragraph—would have been immaterial to the coverage dispute, as it could not override the Repair Clause's unambiguous text. *See O'Brien*, 785 A.2d at 289.

**AFFIRMED.**